J. A. TOBIN, ET AL, *Relators, v.*
A. S. BROADFOOT, DISTRICT JUDGE, ET AL, *Respondents*

No. 27,002. May 26, 1954.

*Baldwin & Votaw,* by *E. B. Votaw,* Beaumont, for relators.

*Atwood McDonald,* Fort Worth, for respondents, and *Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

This is an action brought by three jury commissioners and sixteen possible grand jurors that were selected by these jury commissioners during the November term, 1953, of the district court of Duval County, Texas. They pray for the issuance of writs of prohibition, mandamus and certiorari as hereinafter mentioned.

The said district court of Duval County, under the statute, holds two terms each year: one commencing on the first Monday in November and continuing until the other term, which commences on the first Monday in April thereafter, these terms being continuous. During the November term of said court, Judge C. Woodrow Laughlin was the district judge of said judicial district, which is the 79th Judicial District of the State of Texas.

Thereafter, Judge Laughlin was removed by the Supreme Court of Texas in the manner prescribed by Section 6 of Article 15 of the State Constitution, the opinion therein being found in the case styled "In Re Laughlin, District Judge," and reported in 265 S.W. 2d 805.

By virtue of the power vested in the Chief Justice of the Supreme Court of Texas under Section 1-A of Article V of the Constitution of Texas, and Section 7 of Article 6228b, V.A.C.S., the Honorable A. S. Broadfoot, a District Judge of the state who was on retirement at the time as provided by statute, was directed by the said Chief Justice to serve as Judge of the 79th Judicial District Court pending the appointment of a regular judge by the Governor of Texas.

Judge Broadfoot's authority to preside as judge of said court under such assignment is not questioned.

At the November term of said district court, it being the one at which the three jury commissioners were appointed by Judge Laughlin, Judge A. S. Broadfoot entered an order revoking the order previously made by Judge C. Woodrow Laughlin appointing these relators as jury commissioners and setting the same aside for reasons satisfactory to him, stated in the order, and voiding the appointment of the said jury commissioners, and also all acts upon their part relative to the selection of the sixteen persons, all relators herein, as prospective grand jurors for the April term of the 79th Judicial District Court. This order revoking a previous order of Judge Laughlin was entered on the 31st day of March, 1954, and was within the November term, 1953, of the 79th Judicial District Court.

Judge Broadfoot did not appoint other jury commissioners at said term, nor did he recall those who had been appointed by Judge Laughlin or otherwise provide for the selection of grand jurors at said term for the succeeding term.

On April 5, 1954, as provided for by statute, the 79th Judicial District Court went into its April term of such year, and the same being after the order made by Judge Laughlin previously referred to, which authorized the acts of the three jury commissioners herein complaining, had been set aside by Judge Broadfoot during the regular November term of the district court.

It is relators' position that the order entered by Judge Broadfoot on March 31, 1954, was entered in complete disregard of

the applicable statutes and is void, and they pray for the issuance of a Writ of Prohibition, prohibiting Judge Broadfoot from enforcing or attempting to enforce such order or attempting to discharge or disqualify relators for grand jury service for which they were selected.

We permitted the application to be filed and issued notice to Judge Broadfoot to show cause why such writ should not issue, prohibiting the selection of a new grand jury list at the April term, as well as the writ of mandamus also prayed for, requiring that the grand jury be selected from the list drawn by the jury commission appointed by Judge Laughlin at the November term, 1953, for service at the April term, 1954.

We further directed that no grand jury be impaneled for the April term of said district court of Duval County prior to the disposition of this case.

The jurisdiction of this court is sought to be invoked upon the premise that the order of March 31, 1954, by Judge Broadfoot is void, and any attempt to enforce it would infringe upon the potential jurisdiction of this court.

As precedent, relators cite and rely on State ex rel. McNamara, County Attorney, v. Clark, District Judge, et al, 79 Texas Cr. Rep. 559, 187 S._W. 760 and State ex rel. Flowers, et al, v. Woodruff, et al, 150 Texas Cr. Rep. 255, 200 S.W. 2d 178.

In each of these cases, an order had been entered in a civil proceeding by a district judge, enjoining officers from enforcing a penal statute or ordinance upon a finding by the district judge that such penal law was invalid.

This court issued the writ of prohibition in each of these cases holding that the district judge was without jurisdiction to pass upon the validity of the penal law involved, there being no property rights involved. The court reasoned that to permit a judge in an equity proceeding on the civil docket to enjoin the enforcement of a penal statute or ordinance would be to permit such trial court to usurp the functions of the criminal courts and especially the Texas Court of Criminal Appeals, which is vested with final authority to pass upon the validity of penal statutes and ordinances.

The court reasoned that the issuance of writ of prohibition in such cases was necessary to enforce the potential jurisdiction

of the Texas Court of Criminal Appeals to determine the validity of the statute and ordinance respectively.

Relators say that Judge Broadfoot's order of March 31, 1954, is void.

Judge Broadfoot cites our holding in Pena v. State, 114 Texas Cr. Rep. 15, 24 S.W. 2d 396, as authority for his contention that his order of March 31, 1954, is not void.

It seems clear that unless the order complained of is void we are without jurisdiction to entertain the application or to grant the writs prayed for.

The validity of the order of Judge Laughlin or the competence, suitability, availability or qualification of the jury commissioners or the members of the grand jury panel selected by them is not controlling. The sole question is the jurisdiction of the court while presided over by Judge Broadfoot on March 31, 1954, to enter the order which he did.

The November term has long since expired, and when it adjourned, the only order appointing jury commissioners and the only proceeding for the selection of grand jurors for the succeeding April term had been set aside and annulled.

Unless the order which set aside the appointment of jury commissioners and cancelled the grand jury panel selected by them may be disregarded as wholly void, we know of no relief which we would be authorized to grant, if in fact relators are entitled to relief.

We decline to examine the record of the testimony heard by Judge Broadfoot. If we did and in the light of other facts now before us should determine that the testimony so heard was not true, or if we failed to agree with the trial court's conclusion therefrom, the fact would remain that the order has been entered and may not be disregarded as void.

The matters herein present seem to be based upon the question as to whether or not a judge had control over his orders and judgments during the term of court at which they were made, and we find the general rule stated in 34 Corpus Juris, p. 207, Sec. 436, as follows:

"A court has full control over its orders or judgments during the term at which they are made, and may, upon sufficient cause shown, in the exercise of its sound discretion, amend, correct, revise, supplement, open, or vacate such judgments."

See also 49 Corpus Juris Secundum, p. 433, Sec. 228, and many cases cited.

This principle is recognized and applied by this court in many cases. It has also been declared that "during the term of the court at which any judgment has been entered, or motion acted upon, the court still has power, during the term, over all of its proceedings, and may correct and reform or set aside any judgment or action of the court had during the term." See Bundick v. State, 59 Texas Cr. R. 9, 127 S.W. 543; also 12 Texas Jur. p. 736, Sec. 366, and many cases cited.

In the case of Pena v. State, 114 Texas Cr. R. 15, 24 S.W. 2d 396, the facts show that Judge Cox was the regular judge of the district court of Bee County, Texas, and that at its previous term of court he had appointed jury commissioners and ordered them to select a grand jury. He accepted that grand jury at the succeeding term, and instructed them, and then allowed them to recess for a short period of time. During the absence of Judge Cox while presiding over a trial in another county, the Bar of Bee County elected a special judge as provided by law, and on November 18th, he appointed jury commissioners to select grand and petit jurors for the next regular term of said court which would therein convene in April, 1927. These commissioners qualified, met, and returned lists supposed to contain the names of such jurors, to the district clerk, but these documents had never been opened or used at the time herein complained of. Judge Cox returned within a short period of time and resumed the bench, being at the same term of court. On that day he made an order which was carried into the minutes, reciting that the appointment of said jury commission by said special judge and the selection by them of jurors for the next succeeding term of court was vacated and held of no effect. He also found that they had failed to select a special venire as required by law and had overlooked and failed to consider Mexican citizens and jurors who might be otherwise qualified. Being informed that such Mexicans might be before that court at the succeeding term and possibly raise a question relative to discrimination against Mexicans on the jury, Judge Cox ordered that the appointment of the jury commission by the special judge be vacated and set aside and the jurors selected by them not be summoned. The judge then se-

lected other jury commissioners and ordered them to perform the duties as provided for in the statute.

This was the real question decided in the Pena case wherein this court, by a majority opinion, held that a district judge had the power during the term of his court to vacate and set aside any judgment, order or decree made by him at that term of court. See authorities, supra.

We find the same condition present in this case. Judge Laughlin had appointed jury commissioners at a prior term of court for the April term and they had performed their duties and filed certain lists of jurors selected by them as possible grand jurors for that term, but during the November term of that court, Judge Laughlin was removed from office and Judge Broadfoot was placed in his stead. Judge Broadfoot revoked, vacated, cancelled and set for naught the appointment of the Laughlin jury commission, as well as their labors performed thereunder. This all happened during the November term of court. Under the Pena case, supra, this court upheld the action of Judge Cox, and commended the revocation of such order. Under the circumstances herein present, we think we can rely upon that opinion as being decisive of the matter now before us.

Relators point to the fact that Judge Broadfoot did not appoint other jury commissioners or otherwise have grand jurors selected at the November term for the April term. They express the view that under the circumstances, Judge Broadfoot is powerless now to appoint jury commissioners and to proceed with the business of the 79th Judicial District Court by virtue of Articles 333, 348 and 372 of Vernon's Ann. Texas C.C.P., relative to the selecting of grand jurors.

Articles 348, 338 and 333, C.C.P., have been amended by Acts of the 52nd Legislature, Regular Session, 1951, page 815, and there is no longer a mandatory statute requiring grand jurors to be drawn at each term for service at the succeeding term. A district judge now has the power to direct a writ, in his discretion, to be issued to the sheriff, commanding him to summon the jury commission, which commission shall select sixteen persons, as provided by law, to serve as grand jurors at a present term thereof. In doing so he violates no mandatory statute.

For the reasons stated we are without jurisdiction to entertain the application or to issue the writs.

We are also without jurisdiction to entertain the application of certain officers and candidates for office who seek to intervene or separately apply for writs of prohibition against Judge Broadfoot because of anticipated suits and proceedings they claim are threatened.

All relief prayed for by the relators herein is denied, and the attempted intervention by certain candidates for office, or occupants of public office, in Duval County in this cause is also denied.

Because of the order heretofore made by this court as to the impaneling of a grand jury while this case is pending, we deem it advisable that no motion for rehearing be entertained, and that mandate issue forthwith.

It is so ordered.

MORRISON, Judge (dissenting).

As I see it, there is but one, and only one, issue before us in this proceedings. It may be simply stated in the form of a question: Can a district judge hear evidence and enter an order, such as Judge Broadfoot has entered in this particular case, in secret and in the absence of the interested parties? By the majority opinion my brethren say "Yes." I cannot agree. Section 13 of Article I of our Constitution, in part, says: "All courts shall be open . . . ." The term of court in which he enters the order can have no bearing on the basic issue just stated. Only incidentally are my brethren upholding the conduct of Judge Broadfoot in Duval County. Far more important to the people of this state is the precedent which they here write and which may be followed by district judges in every county in the state for years to come. Such a precedent should not be established to fit a particular case.

Article 358, C.C.P., prescribes the method to be pursued when any person is selected as a grand juror and how such grand juror may be challenged. The pertinent part of that article reads as follows:

"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard . . . ."

It is obvious to me that it was the intent of the legislature to require that such challenges be made in open court. To require that they be so made would certainly be consistent with the basic tenets of our Constitution. To allow such challenges to be made in secret would afford the person whose fitness has been questioned no opportunity to know or deny the basis upon which he is challenged, and, still more dangerous, it would allow the district judge to continue to dismiss grand juries until one was chosen which suited his fancy.

In the case at bar the members of the grand jury had been notified of their appointment and did actually report in open court for service, as they had been directed to do by the sheriff, and filed a motion with the court requesting that he test their qualifications to serve. The court refused to hear such motion or to test their qualifications and gave no indication as to when he would do so. The least that can be said about such action is that it unquestionably leaves a stain or stigma upon the reputation of the persons involved.

As I view it, the proper disposition of the problem before us would be for this court to direct the judge to call the grand jury theretofore lawfully selected and, when they assemble, let any and all who challenge their fitness to serve state their reasons in open court; then at that time let the court pass upon their fitness.

The majority opinion cites the case of Pena v. State, 114 Texas Cr. Rep. 15, 24 S.W. 2d 396, to sustain the action of Judge Broadfoot and to sustain their decision in this case. It should be noted that in the Pena case the grand jury list had never been opened by the clerk, and therefore the grand jury selected had never been notified that they were to serve.

I do not agree with the holding in the Pena case, and I certainly feel that it is not controlling here. Judge Morrow, one of the greatest judges who ever sat upon this court, dissented in the Pena case. His logical and scholarly dissent in that case impresses me as the proper solution of that case, and a wise and judicial approach to this case. In the Pena case Judge Morrow said:

"The procedure adopted is an innovation without precedent so far as the writer is aware, and one which, if given sanction by this court in this particular case, would furnish a precedent

which might be used to seriously impair the right of trial by jury."

He alone seems to have detected the danger of authorizing a judge to dismiss grand and petit juries without a public hearing on the question of their fitness.

In Davis v. State, 105 Texas Cr. Rep. 359, 288 S.W. 2d 456, this court held that a district judge was clearly in error when he required the jury commissioners to show him the names of the grand jurors whom they had selected, and when he found thereon four names objectionable to him he then struck them and instructed the jury commission to draw others. In this case Judge Broadfoot has stricken all the members of the grand jury.

A grand juror is selected to perform an official and public service. Judge Morrow says a grand juror is a public official, and to me it is unthinkable that a public official should be removed from office as the result of a secret hearing. I can conceive the clamor that would arise if this court went into executive session and, without notice of our intention to do so, declared that a certain state official was not qualified to hold his office and entered an order removing him from such office without having given him his day in court. I think all would agree that such an order would be void. That is exactly what Judge Broadfoot did in this case.

The opinion of my brethren will empower a district judge, who has selected an impartial jury commission who, in turn, have selected an impartial grand jury, to summarily dismiss them if some friend or foe gets in trouble, and then select a new slate more appropriate to him personally for the occasion. The Supreme Court of this state has recently removed Judge Laughlin for discharging a grand jury. I cannot see how we may consistently uphold Judge Broadfoot when he does the same thing.

It is clear from the record before us that Judge Broadfoot, almost immediately after assuming his office, met in secret with the attorney general behind closed doors guarded by Texas Rangers, there heard certain "evidence," and then entered his order discharging relators, who had lawfully been selected as grand jurors for the county. If he can do this, then he, and every other district judge in Texas, can completely control the members of our grand juries, and a valuable check and balance in our government has been destroyed. In my opinion, such an act smacks of the police state and is not in keeping with the policy

of the law. I know of no stronger language with which to condemn such conduct.

I respectfully enter my dissent.