R. L. Adame v. State
No. 27,638. October 5, 1955
State's Motion for Rehearing Denied
(Without Written Opinion) November 9, 1955

*W. J. Raymond, V. C. Woods,* Laredo, *Luther E. Jones, Jr.,* Corpus Christi, *O. P. Carrillo,* San Diego, *William T. Moore* and *John M. Barron,* Bryan, for appellant.

*John F. May,* District Attorney, Karnes City, and *John Peace,* San Antonio, amicus curiae.

*Sam Burris,* District Attorney, Alice, *Davis Grant,* Asst. County Attorney of Brazos County, Bryan, *John Ben Shepperd,* Attorney General of Texas, *Sam Kimberlin, Jr., Jim McCormick, D. S. Meredith, Jr., Sam Ratliff,* Assistants Attorney General, Austin, and *Leon Douglas,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for felony theft, with punishment assessed at two years in the penitentiary.

The appellant was indicted by a grand jury organized and empaneled by the acting judge of the 79th District Court of Duval County at the April, 1954, term of said court, which grand jury was selected by a jury commission appointed and empaneled after the convening of said term of court.

Upon the court's own motion, the venue of the case was transferred to the district court of Brazos County.

By various motions to quash the indictment as well as challenge to the array of the grand jury, the validity of the indictment was assailed. In a general sense, without stating the details, this was done because, allegedly, (1) the grand jury which returned the indictment was drawn, organized, and empaneled, not in accordance with law, but wholly in disregard of the applicable and controlling laws of this state, (2) and in the organization and selection of the grand jury the organized and established class of citizens of Duval County, of which appellant is a member, was discriminated against in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

The validity of the indictment is properly before us for consideration.

The 79th Judicial District Court of Duval County, under the law, holds two six-month terms of court each year commencing

on the first Monday in April and November, the court being, in effect, in continuous session.

On January 25, 1954, and during the November, 1953, term, the then judge of that court, by authority of and in keeping with the statute law of this state, appointed jury commissioners to select a grand jury panel from which a grand jury was to be selected and empaneled for the term of court commencing on the first Monday in April, 1954, the same being the 5th day of April, 1954.

The jury commissioners so appointed did, on the 25th day of January, 1954, select the grand jury panel and made due return thereof into court.

On March 12, 1954, the list so drawn was opened by the clerk of the court, and something like three weeks prior to the opening of the April term of court the sixteen grand jury veniremen were each served by the sheriff to be in court on April 5, 1954.

It is apparent, therefore, that at least three weeks prior to the convening of the April term the personnel of the grand jury panel was fully known and that the grand jury for the April term of court would be selected from those sixteen names.

On March 17, 1954, the Texas Supreme Court entered its order, judgment, and decree removing from the office of judge of the 79th Judicial District Court of Duval County the duly elected, qualified, and acting judge of that court.

From and after such order, the court was without a judge.

In virtue of applicable statutes, the chief justice of the Texas Supreme Court undertook to find a way by which a judge might lawfully be provided for the court, pending election of a new judge. He concluded that, inasmuch as the law authorized retired judges who are members of the judicial retirement system to be called to judicial service by the chief justice, he would fill the vacancy from that body.

Judge A. S. Broadfoot, of Bonham, Texas, was one of such retired judges.

The chief justice tendered the appointment to Judge Broadfoot, who did not accept until after he had discussed the appoint-

ment with the attorney general of this state and members of his staff.

Judge Broadfoot went to Alice, in Jim Wells County, one of the counties comprising the 79th Judicial District of Texas, and on Monday, March 29, 1954, was sworn in as judge of the 79th Judicial District of Duval County, Texas.

In view of the events following Judge Broadfoot's qualifying as judge, it is material to note that he was sworn in one week prior to the convening of the April term of court and that after the day he was sworn in there remained only five days of the November, 1953, term of court.

Among the first motions submitted to Judge Broadfoot was that of the attorney general of this state seeking to have the grand jury which had been empaneled at the beginning of the November, 1953, term and then serving as the grand jury at that term discharged because they had not performed and would not, as viewed and alleged by the attorney general, perform their duties as grand jurors. Allegedly the main thing wrong with the old grand jury was that it did not investigate and would not return bills of indictment against those the attorney general thought ought to be indicted.

This motion does not appear to have been acted upon by Judge Broadfoot, favorably, at least, from the standpoint of the attorney general, for it is shown that the grand jury — that is, the old grand jury — filed its final report for the term on April 2, which was the day prior to the final adjournment of the November, 1953, term of court.

The attack on the old grand jury is material here only in so far as it may tend to establish the attitude of the attorney general in endeavoring to obtain a grand jury in Duval County that met with his approval and to secure Judge Broadfoot's assistance in that endeavor.

Just where Judge Broadfoot got the idea the record does not disclose, but on March 31, 1954, and the second day after he had taken the oath of office as judge of the 79th Judicial District of Texas, Judge Broadfoot, not as judge of the 79th Judicial District, but as a magistrate, resolved himself into a court of inquiry. His certificate as to that court of inquiry and his reason for calling the same reads as follows:

"THE STATE OF TEXAS
IN THE 79TH DISTRICT COURT

"'COUNTY OF DUVAL
OF DUVAL COUNTY, TEXAS

## "COURT OF INQUIRY

" . . . I, A. S. Broadfoot, Acting Judge of the 79th Judicial District of Texas, acting in the capacity of a Magistrate, and calling in session a Court of Inquiry to inquire into certain irregularities that have officially called (sic) to the attention of the Court, and to establish facts upon which the Court might base his judgment in passing on certain matters within the discretion of the Court and to establish facts to exercise that discretion, and touching any violations of law in Duval County, Texas, that might be disclosed herein."

The record further reflects that the attorney general and certain of his assistants were present at the invitation of Judge Broadfoot at the court of inquiry which was held by the judge, sitting in chambers in the courthouse at San Diego, Texas. The hearing was not open to the public but wholly in chambers.

The hearing, which concluded on the same day it began, shows an endeavor to find some facts or reason whereby Judge Broadfoot could discharge the list of grand jurors that had been regularly drawn and summoned to appear for grand jury service at the April term.

At the expiration of the hearing, and on March 31, 1954, Judge Broadfoot entered the following order and decree:

"IT IS ACCORDINGLY ORDERED, ADJUDGED, AND DECREED by the Court that the order of January 25, 1954, entered by C. Woodrow Laughlin, former Judge of this Court, purporting to appoint and order summoned Jury Commissioners to select grand and petit jurors for the April term, 1954, of this Court be, and the same is hereby in all things set aside, vacated, and held for naught; that any and all other orders in that regard which may have been made by said C. Woodrow Laughlin, whether or not entered of record, likewise be set aside, vacated, and held for naught; that any and all acts performed or attempted to be performed by said Tyson Summy, J. A. Tobin, and Jose Angel Heras, purported jury commissioners as aforesaid, be set aside and held for naught; that the grand jury and petit jury lists returned by said purported commissioners be forthwith delivered by the Clerk to the Judge of this Court for im-

poundment and safe-keeping, subject to the further orders of this Court; and that the Clerk forthwith instruct the Sheriff of Duval County to notify the grand and petit jurors so selected as aforesaid not to appear as previously ordered."

The order appears to have been based upon the following findings of fact:

"That said purported commissioners did not use due care and diligence in selecting fair and impartial grand jurors and petit jurors;

"That since the said purported commissioners attempted to select grand and petit jurors for the April term, 1954, of this Court, disclosures have been made to the extent that it now becomes apparent that the grand jury for said April term will be called to investigate the handling of the public moneys of Duval County, of San Diego Independent School District, of Benavides Independent School District, and of all of the common school districts of Duval County, as well as the acts and conduct of many of the officials of Duval County and its said political subdivisions; that the said grand jury will be called upon to investigate nepotism in said County and all of its political subdivisions; that because of the personal and business relationship of many of the grand jurors attempted to be selected to many of the persons who as a matter of course will be under investigation, the grand jury so selected by said purported commissioners is not now a fair and impartial grand jury; that thereby there does not remain a sufficient number of grand jurors who would be qualified to subscribe in good faith the oath prescribed by law; that it would be impractical as well as unfair to attempt to fill the panel by summoning additional jurors to replace those who are disqualified; that there is no likelihood that the aforesaid purported commissioners would select a new grand jury in all things fair and impartial, because of the personal and business relationship which said commissioners have toward persons who will be under investigation by the grand jury for said April Term, 1954 — of this Court;

"That the orderly administration of justice requires that the aforesaid order of the said C. Woodrow Laughlin dated January 25, 1954, be set aside and held for naught in order that fair and impartial jurors may be selected, and that all acts performed or attempted to be performed by the said purported commissioners should likewise be set aside and held for naught:"

So, three days before the adjournment of the November,

1953, term of court and five days before the convening of the April, 1954, term, Judge Broadfoot completely set aside and nullified the grand jury list that had been duly drawn and from which a grand jury was to be selected at the April term.

Thus, by solemn decree, Judge Broadfoot placed upon members of the grand jury panel the stigma of being men who would not do their sworn duty as grand jurors and men who were not "fair and impartial."

It must be remembered that this order and decree was made and entered without any notice whatsoever to the members of the grand jury panel that their character, fitness, and qualifications as grand jurors were to be investigated, nor were they permitted to be heard in their own defense or behalf. Indeed, the order and decree was based upon the statements, declarations, and independent investigation that Judge Broadfoot, and he, alone, chose to accept.

Judge Broadfoot persisted in enforcing his order even though the members of the grand jury panel sought, by petition to this court, without avail, to have him test, in a proper proceeding and in accordance with law, their qualifications and whether they were fit persons to be empaneled on the grand jury. See Tobin et al v. Broadfoot, 160 Texas Cr. R. 190, 268 S.W. 2d 162.

After the grand jury panel had been dismissed, the April, 1954 term duly convened and Judge Broadfoot appointed a grand jury commission of his own choosing which selected the grand jury panel from which he empaneled the grand jury that returned the indictment in this case.

In support of his contention and in addition to the foregoing facts, appellant calls attention to the following facts taken from the testimony of Judge Broadfoot, touching his appointment as judge and the reasons prompting his above-mentioned action.

It appears that Judge Broadfoot had occasion to be in Austin a few days prior to or about the time the Texas Supreme Court announced its decision removing from office the regular judge of the 79th District and had occasion at that time to call upon the chief justice. In the course of the conversation that ensued at that visit, the chief justice asked Judge Broadfoot if he "were willing to take an assignment" — that is, agree to be assigned as judge of some district court — and suggested that he stay over for a few days. The following day the chief justice sent

for him and again asked him if he would accept an assignment. Judge Broadfoot asked for time to consider such assignment and later that same day, and after having conferred with the attorney general, agreed to accept the assignment to act as judge of the 79th Judicial District.

Judge Broadfoot returned to Austin on Saturday, March 27, before he was sworn in as judge of said court the following Monday, March 29. He testified that while in Austin at that time:

"I came and saw the Attorney General upon an appointment with him, yes sir. I don't know it was at his request or mine, but we decided over the telephone that it was necessary for us to have a little conference . . . I had talked with the Attorney General several days before over the telephone. I believe he called me. It could be that I called him, because I wanted to see him as I came through Austin."

During that conversation, Judge Broadfoot was made acquainted with what the attorney general considered to be violations of the law in Duval County, based upon considerable investigation upon his part. At that time, Judge Broadfoot was furnished a copy of the motion to dismiss the "old grand jury" heretofore mentioned. He testified that in the course of the conversation the attorney general told him "what kind of grand jury he found out the old one was, and he didn't see that the new one was any better — I believe is what he said." In reference to the "old grand jury," the attorney general also said that they would not investigate the financial affairs of Duval County and that the new grand jury, or the grand jury to be empaneled on April 5, "didn't look any better to him."

It was from this conference that Judge Broadfoot went to Alice, in Jim Wells County, and took the oath of office as acting judge of the 79th District of Texas on the 29th day of March, 1954, set up his court of inquiry, and two days thereafter entered his order of March 31, 1954, vacating the order appointing jury commissioners to draw a grand jury for the April, 1954, term and cancelling the list of grand jurors drawn by that jury commission.

If this order of March 31, 1954, was made and entered by and under authority of law, the indictment in this case is valid; otherwise, it is not.

It is the state's position that the grand jury which returned the indictment upon which this conviction was predicated was properly selected and empaneled, under the provisions of Art. 348, Vernon's C.C.P., which reads as follows:

"Failure to select

"If for any reason a grand jury shall not be selected or summoned prior to the commencement of any term of court, or when none of those summoned shall attend, the District Judge may at any time after the commencement of the term, in his discretion, direct a writ to be issued to the sheriff commanding him to summon a jury commission, selected by the court, which commission shall select sixteen (16) persons, as provided by law, who shall serve as grand jurors."

The state reasons that, inasmuch as Judge Broadfoot had dismissed the grand jury panel prior to the convening of the April term, there was no grand jury selected or summoned for that term of court and therefore the authority existed under Art. 348 to select and empanel a grand jury for the April term after it had convened.

Obviously, the basis of that contention lies in that provision of Art. 348, Vernon's C.C.P., which says:

"If for any reason a grand jury shall not be selected or summoned prior to the commencement of any term of court . . . "

In Martinez v. State, 134 Texas Cr. R. 180, 114 S.W. 2d 874 at p. 877, we had occasion to construe that portion of the statute. We there said:

"By an unbroken line of authorities, it has been held that an intentional failure to have a grand jury selected at a preceding term of court would not authorize the court to select them under Article 348. It seems perfectly plain that in amending Article 348 the only purpose of the Legislature was to say that if any of those reasons which excused selecting the grand jury at the preceding term of court was present, then the court, instead of having the sheriff summon men from whom a grand jury could be impanneled for the instant term, should appoint commissioners to select the grand jurors for the instant term."

In other words, the language of the statute, "If for any reason a grand jury shall not be selected or summoned prior to the commencement of any term of court," means for any *good* reason — that is, for some reason which the law recognizes or

authorizes, as distinguished from intentional, arbitrary, and without lawful authority.

Ultimately, then, both the validity of the indictment in this case and that of the grand jury which returned it depends upon whether the dismissal of the grand jury panel by the order of March 31, 1954, was ordered for some reason authorized by law, because, if that order was unauthorized, then a grand jury had been summoned at the preceding term of court from which the grand jury was to be empaneled.

The Constitution of this state enjoins the legislature to "prescribe by law the qualification of grand and petit jurors" (Art. XVI, Sec. 19) and prescribes that no person shall be held to answer for a felony offense unless on an indictment of a grand jury (Art. 1, Sec. 10).

In obedience to that mandate, the legislature, by Chap. 1, Title 7, of our Code of Criminal Procedure (Arts. 333-372), prescribed the qualifications for grand jurors and the procedure for organizing and selecting a grand jury.

As heretofore mentioned, it has long been the holding of this court that an arbitrary disregard of those statutes in the selection and organization of a grand jury vitiates and renders such grand jury without authority. Martinez v. State, supra; Hunter v. State, 108 Texas Cr. R. 142, 299 S.W. 437, and authorities there cited.

It becomes material to notice the authority a district judge has in the selection of a grand jury. He appoints a commission of not less than three nor more than five persons having certain qualifications (Art. 333, Vernon's C.C.P.) and instructs them "in their duties" (Art. 336, C.C.P.). Each member of the jury commission takes a prescribed oath (Art. 335, C.C.P.) in which he swears, among other things, that he "will not make known to any one the name of any juryman selected . . . " When that jury commission is selected and sworn, the members thereof become and are officers of the court, charged with the duty of selecting for grand jury service those who, they believe, meet the qualifications prescribed by law.

The district judge has absolutely nothing to do with selecting the grand jury list or those who compose the grand jury. In fact, in Davis v. State, 105 Texas Cr. R. 359, 288 S.W. 456, we held that requirement by a district judge that he be per-

mitted to inspect the list of grand jurors drawn by the jury commission and to strike therefrom those he did not agree would make good jurors vitiated a grand jury selected in such manner.

When a district judge comes to empanel a grand jury from the list selected by the jury commission, it is his duty to test the qualifications of those selected for grand jury service and to accept as grand jurors those found to be qualified under the law (Art. 355, C.C.P.).

Provision is made for challenging the entire array of grand jurors or any particular person selected for grand jury service. Such challenge, however, is expressly restricted to certain matters (Arts. 358 and 362, C.C.P.).

Nowhere in those statutes do we find that a district judge has any power or authority to dismiss or refuse to empanel one as a member of a grand jury who has been duly selected for grand jury service by a jury commission because he does not think the grand juror will be satisfactory to him or will not do his duty or will not indict those he thinks should be indicted or fail to do what he thinks a member of the grand jury about to be empaneled should do.

This record leads to but one conclusion, which is that Judge Broadfoot dismissed the grand jury panel because, in his opinion and from his viewpoint, those comprising the list were not "fair and impartial."

If there existed sufficient reasons whereby a grand jury could not or should not have been empaneled from the list of grand jurors drawn by the jury commissioners, the place to have adjudicated that question was in open court under the orderly procedure provided by law, and not, as was done, in some secret meeting behind closed doors where those who were tried and condemned as being unfair and partial were neither present nor given the opportunity of being heard in their own defense.

To approve Judge Broadfoot's dismissal of the grand jury panel, under this record, would place in every district judge in this state the power to name and select the personnel of every grand jury serving in his court, for if he could dismiss an entire panel because members thereof did not suit him he could, by that process, dictate who composed the grand jury. Moreover, if a district judge is to advise and consult with the prosecuting attorney as to who are or are not worthy of grand jury service,

from the standpoint of the prosecution — as it appears was here done — so also would counsel for an accused be authorized to appeal to the judge and endeavor to get him to dismiss a grand jury panel because a grand jury selected therefrom would not be fair and impartial to his client but would indict without facts or reason.

To authorize and permit such conduct would amount to a destruction of our grand jury system. This must not happen.

Lastly, the state insists that this court, in Tobin et al v. Broadfoot et al, 160 Texas Cr. R. 190, 268 S.W. 2d 162, sustained the validity of the order of dismissal of date March 31, 1954, and that such holding is authority to so hold here.

In that case, those individuals who composed the jury commission and list of grand jurors cancelled and invalidated by the order of March 31, 1954, sought, by writ of prohibition, to have this court prohibit Judge Broadfoot from enforcing that order and to require him to reinstate the list of grand jurors that had been selected at the November, 1953, term.

It was insisted by petitioners that the order of March 31, 1954, was void — that is, that Judge Broadfoot was without power to issue such an order.

The conclusion reached by a majority of this court was that the order was not void and that we were without jurisdiction to entertain the application, and the same was dismissed for the want of jurisdiction in this court to grant the relief prayed for.

The holding in Tobin v. Broadfoot, supra, is neither applicable nor controlling here, for at least three reasons: (1) The legal question decided in that case was that this court did not have jurisdiction to grant the relief prayed for. The case is authoritative, therefore, only upon that question. We do not have such a question in this case. (2) The issue now before us touching the order of March 31, 1954, is not whether that order is or is not void, or whether Judge Broadfoot did or did not have the power or authority to enter that order. The question here is whether Judge Broadfoot rightfully exercised his judicial power in entering the order. No such question was here presented in or decided by Tobin v. Broadfoot. (3) If Tobin v. Broadfoot is to be construed as approving the order of Judge Broadfoot in dismissing the grand jury panel, it is wrong, under the facts here presented, and should be overruled.

From what has been said, it is apparent that the dismissal of the grand jury panel by Judge Broadfoot was without lawful authority and that the grand jury thereafter empaneled and which returned the indictment against the appellant in this case was illegally organized and was therefore without lawful authority to sit as a grand jury.

Accordingly, the motion to quash the indictment in this case should have been sustained.

The conclusion reached renders unnecessary a determination of the question raised by the appellant as to class prejudice or discrimination in the organization of the grand jury in violation of the Fourteenth Amendment.

The judgment is reversed and the prosecution ordered dismissed.

MORRISON, Presiding Judge, (concurring).

My views on the matter before us here are fully expressed in my dissenting opinion in Tobin v. Broadfoot, 160 Texas Cr. R. 190, 268 S.W. 2d 162, and need not be restated. I concur in the reversal of this conviction and in the order dismissing the prosecution.

WOODLEY, Judge, (dissenting).

The indictment was returned at the April 1954 Term of the district court of Duval County. The grand jury which returned the indictment was empaneled by Judge Broadfoot from a list of grand jurors selected by a jury commission appointed by him at the April Term.

Another grand jury list had been selected for the April Term by a jury commission selected by Judge Laughlin. This was at the preceding term of the court. The order appointing the jury commissioners was, however, set aside by Judge Broadfoot after he began to preside over the court at that term.

I do not understand that my brethren uphold any attack upon the grand jury which returned the indictment other than that based upon the contention that the list drawn under the order of Judge Laughlin at the previous term should have been used.

Before any grand jury was empaneled for the April Term

the question of the validity of Judge Broadfoot's order setting aside the order of Judge Laughlin was squarely presented to this court in Tobin et al v. Broadfoot et al, 160 Texas Cr. R. 190, 268 S.W. 2d 162.

A divided court reached the conclusion that the order of Judge Broadfoot setting aside the appointment of the jury commissioners by Judge Laughlin was not void and could not be disregarded.

By its decision in Tobin et al v. Broadfoot et al, 160 Texas Cr. R. 190, 268 S.W. 2d 162, this court determined that the list of grand jurors selected at the prior term could not be used. This holding became in effect the law of the case and was properly followed in the empaneling of the grand jury which returned the indictment. It should be adhered to by this court and not overruled.

I respectfully enter my dissent.