**Ex parte Terry Lynn BECKER.**

**No. 43632.**

Court of Criminal Appeals of Texas.

Nov. 13, 1970.

Charles H. Erwin, Dallas, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The question presented by this appeal is a rather difficult one requiring a prompt reply since the Dallas County Grand Jury involved is currently in session.

The record in the case at bar reflects that after the five Grand Jury commissioners had been summoned and appeared the District Judge in his instructions informed them that the first 12 names on the list chosen by them probably would be the Grand Jury for the next term of court. Thereafter, the five commissioners discussed the procedure to utilize a cross section of the entire county on the Grand Jury list. They agreed that each of them would select two members of such panel and that these members would constitute the first ten on the list. They discussed at length the following two members to be listed in view of the judge's instructions. Careful attention was also given to the numbers 13 and 14 in the event of disqualification of the first 12, and in like manner, the grand jury panel of 20 was chosen. Frank Hernandez, an attorney and one of the Grand Jury commissioners, testified he had studied the opinion in Brooks v. Beto, 366 F.2d 1 (5th Cir.) and that the commissioners made a sincere effort to obtain as

members of the Grand Jury panel a representative cross section of Dallas County along social, economic, cultural and racial lines who met the statutory qualifications. After the selection of the names the commissioners sealed the envelope containing the same and delivered it to the judge who in turn delivered the envelope to the clerk and administered to him the statutory oath. Thereafter, the clerk made "a copy of the names of those selected as grand jurors," certified the same and delivered such copy to the sheriff. Some time thereafter and prior to the October 5 empaneling of the Grand Jury in question the District Judge caused the clerk to prepare a new list of Grand Jurors at his discretion. Rene V. Martinez, Number 6 on the commissioners' list, was moved to Number 17 on the judge's list and juror Number 17 (Robert Gonzales) became juror Number 6 on the judge's list. Levi Curl, a black American attorney, was moved from Number 11 to Number 16, and John Peavy, Number 16 on the commissioners' list, became Number 11 on the judge's list. Mrs. W. C. (Lola) Darby, who was Number 13, was moved to Number 14 and was replaced by A. J. Kutner who had originally been Number 14.

On October 5, 1970, when the Grand Jury was empaneled, there were no challenges to the array or to any individual members of the Grand Jury panel. Three members of the panel asked to be excused and were. They were Levi Curl, Mrs. Tannebaum (No. 18) and Mr. Sellingsloh (No. 20).

Thereafter, the judge, using the revised list, called the first 12 names thereon and empaneled the Grand Jury.

At the habeas hearing the judge explained his action as to juror Martinez who apparently was connected with the Greater Dallas Community Relations Committee.

While acknowledging that the 24 year old Martinez was a qualified Grand Juror under the law, the District Judge testified:

"I thought he was too young and did not think he accurately reflected the beliefs and opinions held by the majority of the people in Dallas County.

\* \* \* \* \* \*

"I told you that I had already made up my mind that I was not going to select Mr. Martinez to serve on the Grand Jury. I wouldn't have called his name, no matter what list I used." [1]

Admitting he did not know Martinez personally and had not heard of him before, the judge stated he did not think Martinez would be fair and impartial because of unsolicited out of court information received about him from various people in Dallas County. He added: "Of course, I had suggestions from other people but I made the decision personally. \* \* \*"

As to moving Mrs. Darby to a lower position on the list, the judge testified:

"Well, I wanted a fair representation of individuals in the County and there were already three women that were selected and named above them, so probably I changed their positions so that it wouldn't be a predominance of women or not so many on the Grand Jury."

■ At the outset it should be observed that for the appellant to be successful in his collateral attack by writ of habeas corpus upon the act of the Grand Jury in returning the indictment in question, the organization of the Grand Jury must have been void as distinguished from voidable. Ex parte Clemming, 90 Tex.Cr.R. 261, 234 S.W. 667, 668; Ex parte Fertitta, 167 Tex. Cr.R. 483, 320 S.W.2d 839.

■ Although it has been said that the statutes relating to the organization of

1. Later the judge did testify that if Martinez had been "on the last twelve I would have selected him to serve."

grand juries are directory and not mandatory, Ex parte Traxler, 148 Tex.Cr.R. 550, 189 S.W.2d 749, 752, district courts are required to follow the means and methods provided by the Legislature in the selection of grand juries. Terrell v. State, 139 Tex.Cr.R. 130, 139 S.W.2d 108. An arbitrary disregard of those statutes in the selection and organization of a grand jury vitiates and renders such grand jury without authority. Martinez v. State, 134 Tex.Cr.R. 180, 114 S.W.2d 874; Hunter v. State, 108 Tex.Cr.R. 142, 299 S.W. 437 and cases there cited.

A search of our statutes reveals there is no statutory requirement that the district judge take the first 12 qualified persons on the list prepared by the grand jury commissioners. And, surprising enough, there does not appear to be any case which has dealt directly with the subject matter. It cannot be questioned, though, that by custom and tradition it has become a part of the Texas statutory grand jury system.

In upholding the constitutionality of our grand jury system, the United States Supreme Court in Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940) noted the testimony of the court clerk to the effect that the records in Harris County from 1931 to 1938 reflected the custom to be "to select the 12 man grand jury in the order that the names appeared on the list."

In discussing the use of the grand jury list selected by the commissioners one legal publication observed: "[A]nd the first twelve who are qualified are impaneled as the grand jury." The Texas Grand Jury Selection System—Discretion to Discriminate," 21 S.W.L.J. 545, 548.

As earlier noted, the judge in the case at bar told the commissioners the first 12 members of the panel would probably be empaneled and it is observed that while using his own revised list he called the names of the first 12 therefrom.

Frank Hernandez, one of the Grand Jury commissioners, related at the habeas hearing that his own investigation back to 1940 revealed the practice in Dallas County to be the selection of the first 12 qualified members of the panel selected by the grand jury commissioners.

Certainly, such practice is in general accordance with the statutory requirements of selecting petit jurors.

The practice, though, has not always been followed. In Hamilton v. State, 141 Tex.Cr.R. 614, 150 S.W.2d 395, where the grand jury organization was upheld, this court in describing the factual situation said: "The grand jury was selected out of sixteen names,[2] all names placed in a hat and slips drawn out and placed on the lists of the first twelve in the order drawn."

Robinson v. State, 92 Tex.Cr.R. 527, 244 S.W. 599, did not involve a revision of the commissioners' list as in the case at bar but did involve the judge's influence on those actually chosen to serve on the grand jury. In Robinson there remained exactly 12 qualified prospective grand jurors chosen by the commissioners after excuses and exemptions had been passed upon. The District Judge then stated he wanted more grand jurors from Ranger and Cisco. Two of the twelve panel members remarked that if the court intended to excuse anyone they had important business and would be glad to be excused. They were. Two others were summoned by the sheriff upon order of the court and the Grand Jury empaneled.

There the court said:

"We are unable to agree with appellant's contention as set forth in his bill of exceptions No. 1 that the trial court

2. Former Article 338, Vernon's Ann.C.C.P., 1925, required the grand jury commissioners to select 16 names to constitute the grand jury panel. Article 19.06, V.A.C.C.P., as amended 1967, permits the commissioners to select from 15 to 20 individuals to constitute the panel.

committed error in excusing from the list of grand jurors certain men drawn thereon, and in instructing the sheriff to summon other men to take the places of those so excused. We do not think the law regarding the formation of a grand jury should have such rigid and inflexible construction as that the trial court may not excuse from service on such grand jury citizens whose reasons as presented to the court appeal to his sound discretion and were such as to seem to justify such action. Garrett v. State, 66 Tex.Cr.R. 480, 146 S.W. 930."

■ Since there is no statutory or decisional law requiring the district judge to empanel the first 12 qualified members of the grand jury panel who are present and not excused or successfully challenged, however desirable the practice may be, the action of the District Judge in the case at bar in empaneling 12 qualified members of the Grand Jury panel actually chosen by the commissioners, although not the first 12 such members on the commissioners' list, is in our opinion only an irregularity. However unique the irregularity, it is not of sufficient gravity to warrant holding the Grand Jury illegally constituted rendering void ipso facto every indictment returned by such Grand Jury, particularly without any showing of harm or prejudice.[3]

District judges should be cautioned, however, that the decision reached here today should not be considered authority for a wholesale departure from the traditional and wholesome practice of selecting the first 12 qualified members from the list prepared by the grand jury commission.

Our grand jury system has withstood attacks upon its constitutionality in federal court, although the system has been described as susceptible to abuse. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L. Ed. 1692; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; See also Brooks v. Beto, supra; Rodriquez v. Brown, 429 F.2d 269 (5th Cir.).

In Smith v. Texas, supra, wherein the Supreme Court noted the custom of taking the first 12 jurors on the grand jury commissioners' list, the Court said:

"Here, the Texas statutory scheme is not in itself unfair. * * * But by reason of the wide discretion permissible in the various steps of the plan, it is equally capable of being applied in such a manner as practically to proscribe any group thought by the law's administrators to be undesirable."

In Hernandez v. Texas, supra, the Court said:

"As the petitioner acknowledges, the Texas system of selecting grand and petit jurors by the use of jury commissions is fair on its face and capable of being utilized without discrimination. But as this Court has held, the system is susceptible to abuse and can be employed in a discriminatory manner. The exclusion of otherwise eligible persons from jury service solely because of their ancestry or national origin is discrimination prohibited by the Fourteenth Amendment. The Texas statute makes no such discrimination, but the petitioner

3. In answering the narrow question before us we are not passing upon the question of whether any particular indictee prejudiced by such action (such as discrimination resulting from the inclusion or exclusion of certain persons of his race, color, creed, sex, age or place of residence in the county) would have good ground to attack an indictment returned against him by the 12 duly qualified grand jurors empaneled from the list properly drawn by a duly empaneled grand jury commission.

**446**

alleges that those administering the law do."

And in Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692, the Court, while upholding the validity of the procedure, did observe the "wide range of choice" left to the grand jury commissioners in the selection of the grand jury. See also Brooks v. Beto, 366 F.2d 1 (5th Cir.).

None of these cases upholding the constitutionality of our jury system involved the actions of a judge in manipulating the grand jury panel list after a "wide range of choice" by the commissioners.

One can well imagine the challenges that will result if the district judge manipulates the list or exercises peremptory challenges in such a way as to render entirely meaningless the efforts of the grand jury commissioners who have sought to select qualified citizens from different portions of the county involving a cross section of the community along social, economic, cultural and racial lines to be members of the grand jury panel.

In the case at bar, while we cannot commend the action of the District Judge, we cannot conclude that the irregularity involved should render the composition of the Grand Jury illegal and every indictment returned by such body void in the absence of a showing of harm or prejudice.

The judgment is affirmed.

MORRISON, Judge (concurring).

I join in the warning voiced by Judge ONION's opinion. As a guideline for future cases, I refer to such opinion as well as the position I took in Tobin v. Broadfoot, 160 Tex.Cr.R. 190, 268 S.W.2d 162, 166 and my concurrence in Adame v. State, 162 Tex.Cr.R. 178, 283 S.W.2d 223, 230.