## Ex Parte H. D. Miller.

### No. 6986.   Decided May 3, 1922.

**1.—Habeas Corpus—Contempt—Grand Jury—Witness.**

Where relator was fined for contempt in not answering questions propounded by the grand jury, it appeared that the questions propounded were not intended to elicit information pertaining to an inquiry into any offense against the laws of the State, under investigation by the grand jury, the relator must be discharged.

**2.—Same—Statutes Construed—Grand Jury—Witness.**

The scope of the authority of the grand jury and method or procedure and the conditions under which a witness refusing to respond to its inquiries may be punished in this State are prescribed by statute.

**3.—Same—Jurisdiction—Contempt—Habeas Corpus.**

As applied to the law of contempt, the term "jurisdiction" has a peculiar significance. The proceeding is summary and no right of appeal is provided, and the accused has the right to review by the way of habeas corpus. Following Ex Parte Degener, 30 Texas Crim. App., 566, and other cases.

**4.—Same—Materiality of Question—Legal Province of Grand Jury.**

The contention by the State that relator is not entitled to release because of the materiality of the questions propounded by the grand jury is not a matter of concern to the witness, is untenable. Distinguishing Blair v. U. S., 250 U. S., 273, and it is not within the jurisdiction of the trial court to enter judgment of contempt, unless the questions propounded are proper ones, and were material to some inquiry in the legal province of the grand jury. Following Allman v. State, 34 Texas, 673, and other cases.

**5.—Same—Statutes Construed—Contempt—Proper Questions.**

It is by virtue of Article 438 C. C. P., and it alone, that a witness may be ordered confined in jail, for the time and in the summary manner pro-

vided, and this extraordinary power cannot be exerted and such punishment imposed when, as in the instant case, the inquiry bears no relation to an investigation touching any offense against the laws of the State.

From Wichita County.

Original Habeas Corpus proceedings, asking release from judgment of contempt for failing to answer questions as a witness before the grand jury.

The opinion states the case.

*J. W. Akin*, and *Waldon, McDonald & Cummings*, and *Engelking & Dotson*, and *Chas. L. Black*, for relator—Cited Ex-Parte Degener, 30 Texas Crim. App.,.566, and cases cited in opinion.

*R. G. Storey*,. Assistant Attorney General, and *T. F. Hunter* for the State.

MORROW, PRESIDING JUDGE.—Original Application for Writ of Habeas Corpus. Relator is held in contempt of court by reason of his refusal to answer certain questions which were propounded to him by the grand jury.

The inquiry made was whether relator had ever been a member of the Ku Klux Klan, and whether he knew of any one who was a member of such Klan.

The facts in the case are stated in some detail in the companion case of Ex parte Jennings, No. 6987, to which we refer. From these facts, it is apparent that the questions propounded were not intended to elicit information pertaining to an inquiry into any offense against the laws of the State under investigation by the grand jury. Both the district and county attorneys at the time advised the grand jury that the questions were not pertinent to any inquiry within the scope of its authority. No crime was under investigation, but it was sought to determine whether any officers of Wichita County were members of an organization known as "The Ku Klux Klan," and the questions were propounded to this end. The foreman of the grand jury testified in these words:

"We are not now, nor have we been engaged in the investigation of any crime which we have any thought or reason to believe has been committed at the instance or advice of the Ku Klux Klan, or any member of the Ku Klux Klan in Wichita County, Texas."

In addition to the fine assessed against him, relator is condemned to confinement in jail until he declares his willingness to answer the questions.

The scope of the authority of the grand jury and method of procedure, and the conditions under which a witness refusing to respond to its inquiries may be punished in this State are prescribed by statute, Code of Crim. Proc., Title 7, Chap. 2. In Article 432, it is said:

"It is the duty of the grand jury to inquire into all offenses liable to indictment of which any of the members may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person."

Article 438 says, in terms:

"When a witness, brought in any manner before a grand jury, refuses to testify, such facts shall be made known to the attorney representing the state or to the court; and the court may compel the witness to answer the question, if it appear to be a proper one, by imposing a fine not exceeding one hundred dollars, and by committing the party to jail until he is willing to testify."

The State insists that the trial court having jurisdiction to render a judgment of contempt, its judgment is not subject to review by way of habeas corpus. We regard this unsound. As applied to the law of contempt, the term "jurisdiction" has a peculiar significance. In such proceeding, one is not accused and tried and punished as in other proceedings of a criminal nature. The proceeding is summary. No right of appeal is provided. The principles controlling in a habeas corpus proceeding seeking release against a judgment of contempt were stated by this court in Ex parte Degener, 30 Texas Crim. App. 566, from which we quote the following excerpts:

"But 'jurisdiction is of two kinds: first, the power to hear and determine the particular matter, and to render some judgment thereon; and secondly, the power to render the particular judgment which was rendered. The idea of the early courts seems to have been that jurisdiction of courts consists entirely of the former of these powers.' "

"In Nielsen, Petitioner, 131 United States, 184, it is said: 'A party is entitled to a *habeas corpus* not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner.' As said by Chief Baron Gilbert in a case quoted in Ex Parte Parks, 93 United States, 18, 22: 'If the commitment be against law, as being made by some one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge.' "

"In Ex Parte Siebold, supra, Judge Bradley said: 'Personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by the superior court or judge having authority to award the writ.' "

"Church on Habeas Corpus, section 152, quoting from In re Corryell, 22 California, 179, says: 'When the court undertakes the imprisonment for an offense to which no criminality is attached, it acts beyond its jurisdiction.' "

Assuming that relief may be so afforded, it is contended by the State that relator is not entitled to relief because the materiality of the

91 Tex.—39

questions propounded by the grand jury is not a matter of concern to the witness. On this point, we are referred by State's counsel to the case of Blair v. United States, 250 United States Rep. 273; 63 Law Ed., 979. Giving it the effect contended for, the decision would be out of harmony with those of our own court; and moreover, contrary to the statute in which the power to enter this contempt judgment is expressly predicated upon the proof that there has been a refusal to answer a "proper question." The construction of such a statute was not involved in Blair's case, supra. In our opinion, that case is distinguishable upon other grounds. It is shown that "the Federal Grand Jury of the Southern District of New York was making inquiry concerning supposed violations of Article 125 of the Criminal Code." In the case before us, it affirmatively appears that the inquiry was addressed to the investigation of no offense against any of the penal laws of this State. Even if not distinguishable, the rule stated in Blair's case (referring to Nelson v. United States, 201 U. S. Rep. 92), that the relevancy of the question propounded by the grand jury is not a matter to be considered in a contempt proceeding does not govern in this State. Both statutory declaration and judicial interpretation are against it. Code of Crim. Proc., Art. 438. Upon that subject, this court has spoken with much clearness in Ex parte Gould, 60 Texas Crim. Rep. 445, in the course of which it is said:

"All of its inquiries must be directed to the discovery of crime and it has the power to pursue an investigation that may lead to the discovery of crime, but this investigation cannot transcend beyond inquiry into matters that are material to the matter under investigation; and, whenever it does so, the courts are also open to redress to relieve a party from any undue oppression or investigation by them that is not relevant or pertinent to any matter about which they are investigating."

As we interpret the decisions of this court in Ex parte Degener and Ex parte Gould, supra, and the statutes of this State to which we have adverted, it was not within the jurisdiction of the trial court to enter the judgment of contempt unless the question propounded was a "proper one," that is, material to some inquiry within the legal province of a grand jury; and a habeas corpus proceeding being the only one available to test the question of jurisdiction, it is the duty of this court upon such proceeding to make the inquiry. On habeas corpus, therefore, it must appear not only that the tribunal which rendered the judgment was vested with the power to enter a judgment of contempt, but also that it had jurisdiction, upon the facts before it, to render the particular judgment under which the relator is held. The inquiry goes not to the propriety but to the right to punish in the particular instance. In other words, if there was a transgression upon which a judgment of contempt might be founded, this court, upon habeas corpus, cannot lawfully disturb the judgment.

If, however, there was no transgression, there should be no punishment. See Ex parte Degener, 30 Texas Crim. App. 575.

Under a judgment of contempt, one may be punished by a fine or by imprisonment or both. It is the sole exception to the constitutional inhibition against punishment without trial by jury when demanded. It partakes of the nature of a criminal proceeding. Cyc. of Law and Proc., Vol. 9, p. 6. The power to punish does not rest with the grand jury but with the court. When the witness refuses to answer a question propounded by the grand jury, the procedure provided by law requires that the matter be investigated by the court and that the court may punish if the question appear to be "a proper one." Code of Crim. Proc., Art. 478. When so presented, it becomes the office of the court to inquire and determine whether the question which the witness refused to answer was a proper one. If it was not such a question, then the court is without jurisdiction to enter a judgment of contempt against the witness. The court is without jurisdiction to hold a witness in contempt when the refusal is not contempt. Holman v. State, 34 Texas Reports, 673; Gould v. State, 61 Texas Crim. Rep., 195, 134 S. W. Rep. 364; Snodgrass v. State, 43 Texas Crim. Rep. 364; Degener v. State, 30 Texas Crim. App. 566.

In the instant case, this court must determine whether there was a transgression of which the trial court had jurisdiction as that term is above defined to render the judgment under which the relator is held. In making this decision, no view impairing the adequacy of the power conferred upon the grand jury to perform the important duties imposed upon it should prevail. It should not be hampered in the proper exercise of its authority to investigate all past transactions in violation of the penal laws of the State, nor should the law be so construed as to authorize the captious infringement of the right of privacy pertaining to the individual citizen.

Of the grand jury, it is said by the United States Supreme Court: "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." (Blair v. United States, 63 Law Ed. p. 983.)

As is also said, the witness is not entitled to set limits upon the investigation that the grand jury may conduct. The law, however, in Texas, at least, confines its inquiry within definite bounds. See Posten v. Washington, 32 L. R. A. (n. s.) p. 785; Pigg v. State, 71 Texas Crim. Rep. 600. Observing its limitations, it is a useful instrument in the administration of justice. Given unrestrained scope, it could become a means of oppression. The wisdom of our laws deny-

ing it the power to demand an answer to questions which can contribute nothing to the administration of justice but may be inspired by motives entirely outside of the scope of judicial inquiry and result in bringing about loss or mortification to a witness without tending to contribute to the ends of justice, cannot fail to command approval.

The rule established by out statutes, as construed by this court, is not only in harmony with the decisions in many other states but is based upon sound reason. One called as a witness may not put his own interests or sentiments above his duty as a citizen. If, in the administration of justice, his testimony is required, he cannot refuse it simply upon the ground of privacy. Ruling Case Law, Vol. 28, p. 471; In Re Bolster, 29 L. R. A., (n. s.) p. 716; Boston v. State, 31 L. R. A. (n. s.) p. 539. Before the grand jury, he may not refuse to answer a "proper question" because it might expose him to pecuniary loss, or for other private reasons not involved in the constitutional privilege of silence as to matters that might endanger his liberty. Ruling Case Law, Vol. 28, pp. 421-422, secs. 5, 6, & 7; Brown v. Walker, 161 U. S. Rep. 591; Rose's Notes on U. S. Rep., Revised Ed., Vol. 17, p. 556. It is obvious, however, that he would be disinclined to disclose matters that would affect the reputation or the interests of himself or his neighbor, and he ought not to be compelled to do so when the disclosures are pertinent to no inquiry within the province of the grand jury.

Our statute, Art. 438, supra, vests in the court the power to enter. judgment against a witness. It prescribes the terms of the judgment and the conditions upon which it may be rendered, viz.: that the witness refused to answer a "proper question." It is by virtue of this statute and it alone that a witness may be ordered confined in jail for the time and in the summary manner reflected by this record. This extraordinary power cannot be exerted and such punishment imposed when, as in the instant case, the inquiry bears no relation to an investigation touching any offense against the laws of the State.

The relator is discharged.

*Relator discharged.*