## EX PARTE JIM JENNINGS.

### No. 6987.   Decided May 3, 1922.

**1.—Habeas Corpus—Contempt—Grand Jury—Practice on Appeal.**

The manner of selecting the grand jury in question need not be passed
upon in the instant case.

**2.—Same—Witness—Grand Jury—Rule Stated—Proper Question.**

Before a witness who refuses to answer any question propounded to him
by a grand jury can be punished for contempt, it must affirmatively appear

in the language of the statute, Article 438, C. C. P., that the question be a proper question. Following Ex Parte Gould, 60 Texas Crim. Rep., 445.

### 3.—Same—Investigation Before Grand Jury.

Unless the matter under investigation before a grand jury be of a violation of some law or pertain thereto, questions asked would be *coram non judice* and would not be such as are meant by proper question in Article 438, C. C. P. Following Hallman v. Mayor of Austin, 34 Texas, 673, and other cases. Distinguishing Ex Parte Copeland, recently decided.

### 4.—Same—Case Stated—Grand Jury—Witness—Contempt.

A grand jury has no right to ask questions of a witness unless there be a *bona-fide* criminal matter under investigation to which such questions are pertinent, and where the record made it appear in the instant case that there was no such matter being investigated by the grand jury, and that therefore not pertinent to any matter within the scope of their power or duty, the relator should not have been fined for contempt and is discharged.

From Wichita County.

Original habeas corpus proceedings asking release under a judgment of contempt for refusal to testify before the grand jury.

The opinion states the case.

*J. W. Akin*, and *Weldon, McDonald & Cummings*, and *Engelking & Dotson*, and *Chas. L. Black*, for relator: Cited Ex Parte Degner, 30 Texas Crim. App., 566, and cases cited in opinion.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—This is an application for habeas corpus on behalf of relator Jennings, who was fined $100 and committed to the county jail of Wichita County by order of Hon. E. W. Napier, District Judge of said county, for contempt, in that he had refused to answer certain questions propounded to him by the grand jury of said county.

A serious attack is made upon the manner of selection of the grand jury in question, but in view of our disposition of this case we will not pass on said proposition.

It may be well to keep in mind certain general principles applicable herein. Chapter 2 of Title 7 of our Code of Criminal Procedure defines and outlines the powers, duties and privileges of grand juries in this State, and that body is bound and limited by the proscription of the law which calls it into existence. Art. 432 of said Chapter is as follows:

"It is the duty of the grand jury to inquire into all offenses liable to indictment of which any of the members may have knowledge, or of which they shall be informed by the attorney representing the state, or *any other credible persons*."

Art. 440, directing how witnesses before said body shall be questioned, is as follows:

"The grand jury, in propounding questions to witness, shall direct the examination to the person accused or suspected, shall state the offense with which he is charged, the county where the offense is said to have been committed, and, as nearly as may be, the time of the commission of the offense; but should the jury think it necessary, they may ask the witness in general terms whether he has knowledge of the violation of any particular law by any person, and, if so, by what person."

If a witness before the grand jury refuses to answer a question, Art. 438 of said Chapter provides the procedure, and is as follows:

"When a witness, brought in any manner before a grand jury, refuses to testify, such facts shall be made known to the attorney representing the state or to the court; and the court may compel the witness to answer the question, if it appear to be a proper one, by imposing a fine not exceeding one hundred dollars, and by committing the party to jail until he is willing to testify."

So it appears that before a witness who refuses to answer any question propounded to him by a grand jury can be punished for contempt, it must affirmatively appear, in the language of the article just quoted, that the question be "a proper one." It must be kept in mind that a grand jury is but a part of the machinery of government having for its object the detection and punishment of crime, and that when it seeks to extend its inquisition beyond that pale and into matters not in their nature criminal, its effort must be met with a denial of the right or privilege of entry therein. In Ex parte Gould, 60 Texas Crim. Rep., 445, this court, in discussing the articles above referred to, said:

"From these articles of the Code we deduce that some crime, or some person must be suspected of a crime, and that the inquiry must be directed to a discovery either of the crime or the person; and, second, that the grand jury had power to interrogate the witness brought before them with regard to any crime that may have been committed of which the witness has knowledge, as well as the person who is suspected of committing the crime; and, third, the question propounded must be material to the particular matter under investigation, and that no court has power to punish for contempt for disobeying a subpœna unless it is made to appear that the disobedience and refusal to testify is as to some matter material to the prosecution of some crime or person charged with the commission of a crime."

Elsewhere in said opinion occurs the following:

"Under our system a grand jury has great power. Its proceedings are secret and its object is to ferret out crime, to discover the guilty party and indict all parties for the violation of the criminal laws of Texas. Its work is secret, and it is made a penal offense for the grand

.jury to disclose to the world the secrets of its body. Its power, however, is not unlimited and it can not be used as a place, out of idle curiosity, for prying into the domestic and financial affairs of any and everybody, but all of its inquiries must be directed to the discovery of crime, and it has power to pursue an investigation that may lead to the discovery of crime, but this investigation can not transcend beyond inquiry into matters that are material to the matter under investigation; and whenever it does so the courts are also open to redress to relieve a party from any undue oppression or investigation by them that is not relevant or pertinent to any matter about which they are investigating.''

Unless then the matter under investigation be of a violation of some law or pertain thereto, questions asked would be coram non judice and would not be such as are meant by proper questions in Article 438, supra. In Holman v. Mayor of Austin, 34 Texas, 673, we find the Supreme Court using the following language:

''If the question be 'improper' if the court interrogate a witness about a matter over which it has no jurisdiction, and about which it has no right to inquire, the refusal of the witness to answer the interrogatory is no contempt of court, and any order or decision which ,punishes the refusal to answer as a contempt, is void.

'' 'Justices cannot, of course, give themselves jurisdiction by erroneously and capriciously deciding contrary to the truth upon the question upon which their jurisdiction depends. Justices cannot give themselves jurisdiction by finding that as a fact which is not a fact.' (Lawrence, J., in Welch v. Nash, 8 East. 403.)

''The subject matter of this interrogatory lies outside the boundaries which circumscribe the jurisdiction of the mayor, and he cannot bring it within his jurisdiction by calling it a contempt. ̇

''To require a witness to submit to answer an illegal and improper question must be regarded as the personal command of the judge, rather than the judicial order of the court.''

In the recent cases of Ex parte Copeland, No. 6934, and Ex parte Reynolds, No. 6933, decided at this term, it was made plainly to appear from the record that the grand jury before whom the relators refused to answer questions, was investigating the commission of acts criminal in their nature and to which the questions asked were undoubtedly material.

We are thus brought to the proposition as to whether it appears in the instant case that the matter under investigation by the grand jury and to which the questions asked of relator were supposed to appertain, was the commission of some crime or the violation of some law. If yea, his refusal was wrongful and his committal proper. If nay, the questions were not proper and he should be discharged. But for the importance of the matter involved we would decline to take jurisdiction of a record in the condition as that in this case. The

statement of the matters involved consists of a stenographic report of a lengthy colloquy between the attorneys and the court, and the court and the grand jurors, and the court and attorneys with various witnesses. From the entire record we conclude as follows: The grand jurors reported to the court a refusal on the part of relator and two others to answer certain questions which had been propounded to them. The relator and said other parties were brought before the court and in the presence of the court the following questions were propounded to relator by the foreman of the grand jury: ''Q. Mr. Jennings have you been at any time a member of the Ku Klux Klan?'' An answer was refused. ''Q. Do you know of anyone who has been a member of the Ku Klux Klan?'' An answer was also refused to this. The trial court then stated that he would have to fine relator and send him to jail. Upon remonstrance by relator's attorneys that no evidence had been heard on behalf of relator, the court permitted the introduction of such evidence. The county attorney of Wichita County and the assistant district attorney of said county both testified that they had been with the grand jury in its investigations and that they did not consider the questions asked, as above indicated, material to any criminal investigation before said grand jury. The foreman of the grand jury, Mr. Bullitt, was used as a witness and questioned. He was asked what crime had come to his knowledge as having been committed in Wichita county, Texas, that made it material to know whether relator was a member of the Ku Klux Klan and answered that he did not know of any crime. He was then asked if they were investigating any crime that they had heard of being committed within the body of Wichita county, Texas, attributable to the Ku Klux Klan or any of its members; and to this he answered that the only thing he had heard of was that there were officers in Wichita County who were members of the Ku Klux Klan. He was then asked if that was a crime under the penal laws of this State, and said that not unless it appeared that a man belonging to a secret order of that kind was not in harmony with the laws of the State. He further stated that he had not heard of any member of the Ku Klux Klan who had taken the law into his own hand, and further stated that they were not investigating any crime that was committed in Wichita County that they had any reason to believe was committed at the instance of the Ku Klux Klan, and that no one had advised him that if they found that any officer of Wichita County was a member of the Ku Klux Klan that he should be indicted therefor; that they had only been instructed that if they found such officers to be members of the Ku Klux Klan ''to submit him to the judge.'' Some questions were asked this witness relative to whether or not there might not be some question of perjury before the grand jury arising from the denial of membership in the Klan by some witness. Mr. Bullitt seems to have made this further statement: ''With ref-

erence to whether or not if we find some one—we are not investigating to now—we have not been. We have not been investigating perjury in connection with the examination of these witnesses. We are not now, nor have we been engaged in the investigation of any crime which we have any thought or reason to believe has been committed at the instance or advice of the Ku Klux Klan, or any member of the Ku Klux Klan in Wichita County, Texas.''

Further discussion of this matter is not needed. A grand jury has no right to ask questions of a witness unless there be a bona fide criminal matter under investigation to which such questions are pertinent. The record before us seems to make it clear that there was no such matter being investigated by the grand jury, and the questions were, therefore, not pertinent to any matter within the scope of the power or duty of the grand jury.

From what we have said it follows that the judgment of contempt against relator was erroneous and he will be discharged, and it is so ordered.

*Relator discharged.*