**UNITED STATES of America, Plaintiff-Appellant,**

v.

**John DOE et al. (Grand Jury Investigation), Defendants-Appellees.**

**No. 75–1810.**

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1976.

Rehearing Denied Dec. 2, 1976.

John E. Clark, U.S. Atty., W. Ray Jahn, James W. Kerr, Jr., Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellant.

Oscar Gonzalez, San Antonio, Tex., for defendants-appellees.

Before BROWN, Chief Judge, and TUTTLE and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a fall-out from *Mandujano*[1] decided since the District Court considered and we considered the appeal. In connection with an investigation of illegal gambling activities in Las Vegas, Nevada and San Antonio, Texas, a subpoena was issued on February 24, 1975, commanding William Weilbacher (Witness), a sergeant on the San Antonio Police Department, to appear on February 26, 1975, before a properly convened federal grand jury sitting in San Antonio, Texas. Upon service of the subpoena on February 25, 1975, Witness promptly filed a motion to quash alleging that the sole purpose of the subpoena was to embarrass Witness by, intimidate Witness with, and implicate Witness in the illegal gambling activities being examined.[2] A hearing on the motion was held on Feb-

---

1. *United States v. Mandujano*, 1976, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212, rev'g, 5 Cir., 1974, 496 F.2d 1050.

2. Witness alleges in his motion that Wayne Speck, an Assistant U.S. Attorney, was in charge of and responsible for having him subpoenaed to appear before the grand jury. Because of personal animosity between them, Witness alleges that ". . . this proceeding is maintained in bad faith with the purpose of harassing this Petitioner in such a manner that he would suffer severe and irreparable harm to which he has no adequate remedy at law." Witness continues by contending that the

grand jury proceedings will be used by Speck to force him to resign from the San Antonio Police Department, at least in part, as a result of a news leak which has breached the traditional secrecy of grand juries. One last allegation is that the United States Attorney's office has attempted to coerce others, who have pleaded guilty to offenses included among the alleged crimes being investigated by this grand jury, to implicate Witness. The conclusion asserted is that this is effectively a malicious prosecution made solely for harassment and intimidation purposes.

ruary 26, 1975, by the District Court. After receiving the testimony of Witness, the San Antonio Chief of Police, and an Assistant United States Attorney, Mr. Wayne Speck, and immediately subsequent to direct questioning of Mr. Speck by the Court,[3] the subpoena was quashed. Contending the Court's action was based entirely on Witness's status as a potential defendant, the Government appeals. We reverse.

■ Since no findings of fact were made by the District Court and none were requested by counsel for either party, the validity of the District Court's ruling must be predicated on the record *extant* in light of the applicable and intervening law. It is apparent from the colloquy set forth above that the District Court was aware of *Mandujano* which had previously come before that court and was affirmed by this Circuit.[4] Any question regarding the necessity of giving full *Miranda* warnings to one who is a target of a grand jury investigation or using the potential defendant status as the basis for quashing a subpoena to appear and testify before a grand jury has been eliminated. As the Supreme Court emphasized in *United States v. Mandujano,* simply because one is or may be a target of an inquiry is not sufficient to justify quashing a subpoena mandating attendance before a grand jury for testimony purposes.

*Mandujano, supra,* 425 U.S. at 572–575, 96 S.Ct. at 1775, 48 L.Ed.2d at 220–21; see *United States v. Dionisio,* 1973, 410 U.S. 1, 10 n. 8, 93 S.Ct. 764, 35 L.Ed.2d 67; *United States v. Calandra,* 1974, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561; *United States v. Morado,* 5 Cir., 1972, 454 F.2d 167, 172.

■ Examination of the record before this Court indicates no challenge has been asserted against the grand jury. In fact, during oral argument before this Court, Witness through his counsel stated his willingness to appear before the grand jury *if* Wayne Speck would be removed from the investigation—not just from assisting the grand jury during Witness's appearance. Thus, no criticism exists about the grand jury, its actions, or its motives. Unlike Witness's oral and evidentiary fusillade which includes elements proffered to demonstrate prosecutorial animosity, alleged prosecutorial witness misuse and coercion, and fear of Speck's improper use of the grand jury proceedings, this Court's inquiry aims at the core of any successful argument by Witness that will support quashing a subpoena to appear and testify before a grand jury. Such an argument must assert that the grand jury has lost its independence which is essential to the historical assumption of neutrality that underlies the grand jury process.[5]

3. The order of appearance of the witnesses at the hearing was, respectively, Emil Peters (San Antonio Chief of Police), William Weilbacher, and Wayne Speck. At the conclusion of the attorneys' examination of Mr. Speck, the Court made the following inquiry of the Witness.

MR. HANDY (Counsel for Government): I have no further questions.
THE COURT: I have one.
THE WITNESS (Speck): Yes, Your Honor.
THE COURT: And the answer to this question may—on the answer to this question may be the answer to the whole hearing this morning. Is Mr. Weilbacher a target?
MR. HANDY: A target cf the investigation?
THE COURT: Yes.
THE WITNESS (Speck): Yes, sir.
THE COURT: He is?
THE WITNESS (Speck): Yes, sir.
THE COURT: All right. Motion granted, indictment quashed.
MR. HANDY: May it please the Court, it's a subpoena. There is no—

THE COURT: Or subpoena. The subpoena is quashed.
(End of proceedings).

4. Both this case and *Mandujano* came to this Court from the United States District Court for the Western District of Texas. We affirmed the District Court's determination in *Mandujano* that once a witness before a grand jury becomes a putative defendant he must be afforded the full panoply of *Miranda* warnings. In addition, this Court released its opinion in *Mandujano* almost eight months prior to the hearing held by the District Court for Witness's motion to quash. *United States v. Mandujano,* 5 Cir., 1974, 496 F.2d 1050, rev'd, 1976, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212.

5. Although the Fourth Amendment prohibits unreasonableness in governmental actions affecting personal liberty, it· ". . . is clear that a subpoena to appear before a grand jury is not a 'seizure' in the Fourth Amendment sense, even though that summons may be in-

Except in the most singular circumstances, quashing a subpoena for a witness threatens the grand jury's historical prerogative to search for leads to and for sources of physical and verbal evidence of criminal enterprise. Unlike a motion to quash a subpoena *duces tecum*, information possessed in one's mind cannot be pre-segregated into stacks labeled reasonable or nonoppressive in scope. F.R.Crim.P. 17(c) and the Constitution forbid unreasonable governmental seizures of evidence irredeemably unrelated to the grand jury inquiry at hand. *United States v. Calandra*, 1974, 414 U.S. 338, 346 n. 4, 94 S.Ct. 613, 38 L.Ed.2d 561. That concern is adequately protected through proper limitations. Equally apparent is the impossibility of calling only that portion of a witness which possesses information apposite to the investigation. By quashing a subpoena to appear and testify before a grand jury convened in good faith, one permanently precludes a grand jury from one of the investigatory sources related to its inquiry.

■ Since Witness's willingness to appear before the grand jury once a specific Assistant United States Attorney is removed from the entire investigation is a recognition that the Government is not using this grand jury as, and this grand jury itself is not, an unreasonable, harassing, or oppressive instrument, our task is simplified.[6] A grand jury convened and performing in good faith exists.

The record need only be scrutinized for indications that Speck was using or may be able to use the grand jury in an impermissible manner. The evidence and allegations presented may show animosity between Speck and Witness, however, no control over the grand jury by Speck and no ability to misuse the grand jury is demonstrated. Speck was not the only person from the United States Attorney's office assisting the investigation. Nor was he the senior Assistant United States Attorney in charge of that assistance. To avoid any bias or blurred vision regarding this investigation, a Special Assistant United States Attorney was requested by the United States Attorney's office and one was sent from Washington, D. C. for this purpose.

■ Aside from Witness's recognition that this grand jury has a valid purpose, the fact that others have pleaded guilty to offenses under investigation by this grand jury indicates its good faith congregation. Once a grand jury is properly called together, it is its duty to seek and examine all clues before it fulfills its obligation. This includes calling witnesses believed to possess information based on rumor, tips, and prosecutorial suggestion. *Dionisio, supra*, 410 U.S. at 15, 93 S.Ct. 773; *Branzburg, supra* at 701. The reliability of such rumor, tips, or suggestion is not relevant. See *In Re Grand Jury Proceedings*, 5 Cir., 1976, 532 F.2d 404, 407–08. In this case, a grand jury was convened which believes that Wit-

---

convenient or burdensome." *United States v. Dionisio, supra*, 410 U.S. at 9, 13, 93 S.Ct. at 769. Indeed, the Court's opinion in *Dionisio* indicates rejection of a reasonableness showing before one is subpoenaed to appear and testify. See *Dionisio, supra*, 410 U.S. at 16 n. 14, 93 S.Ct. 773 n. 14. In the same opinion, with reference to the First Amendment context of *Branzburg*, the Supreme Court notes that the Constitution could not permit use of a grand jury as an instrument of harassment or oppression.

6. This does not mean that a grand jury's autonomy is without constraints. In fact, Constitutional and statutory limitations exist. Express recognition has been made through the implementation of these restraints by judicial control over grand juries and their subpoena power. See *United States v. Dionisio, supra*, 410 U.S.

at 12, 93 S.Ct. at 770; *Branzburg v. Hayes*, 1972, 408 U.S. 665, 707–08, 92 S.Ct. 2646, 33 L.Ed.2d 626; *In Re Gopman*, 5 Cir., 1976, 531 F.2d 262, 266; *United States v. Stevens*, 5 Cir., 1975, 510 F.2d 1101, 1106. Because this Witness by his counsel's frank statement during oral argument expressed Witness's willingness to appear before any grand jury if Speck is removed from the investigation, we do not have before us any other questions about the need for exercise of such supervisory action by the District Court. Furthermore, when the above recognition is coupled with an examination of the record in this case, no challenge to the grand jury exists based on its inherent prejudice against certain groups or classes of people. See *Pierre v. Louisiana*, 1939, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757.

ness possesses information useful in its task—particularly in light of his target status.

The order to quash has prevented this inquisitorial body from fulfilling its obligation to examine all appropriate sources of information. A Court order which absolutely precludes the gathering of any and all information from a *source* is fundamentally different from one which limits the scope of an appearance to prevent harassment or oppression or one which protects those other rights guaranteed by the Constitution. In this light, the error in the District Court's ruling is apparent.

REVERSED.