**Ex parte Joseph A. EDONE.**

**Ex parte Daniel D. EDONE.**

**Ex parte Kenneth D. HARRELL.**

**Nos. 69593 to 69595.**

Court of Criminal Appeals of Texas.

Oct. 7, 1987.

David L. Botsford, Austin, for appellant.

Jeff Van Horn, Dist. Atty., Lockhart, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

**W.C. DAVIS, Judge.**

The Court originally granted leave to file this original application for writ of habeas corpus in order to determine whether applicants were being illegally restrained of their liberty on account of their respective refusals to answer certain questions propounded before a grand jury. See Art. 20.15, V.A.C.C.P. Specifically, the court granted leave to file to consider the application of *Ex parte Port*, 674 S.W.2d 772 (Tex.Cr.App.1984) to the instant case.

On March 3, 1986, applicants were served with a "Grand Jury Subpoena Duces Tecum," issued by the district attorney of Caldwell County. The subpoenas directed applicants to appear on March 11, 1986, before a grand jury sitting in Caldwell County.

On March 11, 1986, applicant Joseph Edone and applicant Daniel Edone filed a "Motion to Quash Grand Jury Subpoena" which was denied after a hearing. Thereafter, all three applicants were taken into the grand jury room where they were asked questions relating to their alleged involvement in violations of Title 11, Chapter 71 of the Penal Code. Each applicant asserted his rights under the Fifth Amendment to the United States Constitution in refusing to answer the questions propounded.

The district attorney immediately filed an "Application for Order Requiring Testimony." This application sought to compel answers to the grand jury questions in exchange for grants of use immunity pursuant to V.T.C.A., Penal code, § 71.04. After a hearing, the district judge granted the district attorney's request to give applicants use immunity. The judge ordered them to answer the questions propounded.

Thereafter, applicants again refused to answer the same questions before the grand jury. The district attorney filed a "Motion for Contempt" with respect to each applicant. As a result of hearings on the motions, held before the district court, each applicant was held in contempt of the district court by way of an order entitled "ORDER FINDING [applicant's name] IN CONTEMPT OF COURT." The orders recited that each applicant was, pursuant to a court order, ordered to testify before the grand jury; that certain proper and relevant questions were asked of each applicant; and that each applicant refused to answer said questions. Each applicant was found to be "in contempt of a lawful order of this Court." The orders required each applicant to be confined in the Caldwell County Jail until such time as he purged himself of the contempt by answering the grand jury questions. Each applicant was also fined $500. In response to those orders, applicants filed the present applications for habeas corpus relief. On March 21, 1986, this Court granted the motions for leave to file, the causes were set for submission and applicants were ordered released on $5,000 bond.

Applicants contend they are entitled to relief under the holding of *Ex parte Port*, 674 S.W.2d 772 (Tex.Cr.App.1984).

We observe, however, at the outset that it has been made to appear that the term of the grand jury before whom the applicant was ordered to testify has expired and the jurors discharged. Thus, that part of the contempt order requiring testimony before said body is now moot. *Ex parte Jackson*, 95 Tex.Cr.R. 200, 253 S.W. 287 (1923). See also *Ex parte Shorthouse*, 640 S.W.2d 924 (Tex.Cr.App.1982); *Ex parte Rogers*, 640 S.W.2d 921 (Tex.Cr.App.1982), and cases cited therein. Although that part of the contempt orders requiring applicants to appear and testify before the grand jury in order to purge themselves of contempt is now moot, the portion of the orders imposing the fine of $500 on each applicant is not moot. *Ex parte Shorthouse*, supra. See and cf. *Ex parte Richardson*, 640 S.W.2d 294 (Tex.Cr.App.1982).

We turn then to applicant's contention that they are entitled to relief under *Ex parte Port*, supra. According to the plurality opinion in that case, applicants are entitled to relief inasmuch as the court's orders in the instant case are unauthorized because applicants were found to be in contempt of *court* rather than in contempt

of the *grand jury*. Upon further consideration and re-examination of our holding in *Ex parte Porte*, supra, we will deny relief from the imposed fine.

The grand jury is impaneled from an array selected either by grand jury commissioners who are appointed by a district judge, or more directly by the district judge "in the same manner as for the selection and summons of panels for the trial of civil cases in the district courts." See Art. 19.-01—19.26, V.A.C.C.P.

Once formed and impaneled by the district judge, the grand jury shall "inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible persons." Art. 20.09, V.A.C.C.P. After hearing all testimony accessible to them, the grand jurors vote as to presentment of an indictment. Art. 20.19, V.A.C.C.P. While the grand jury may seek advice from the court, Art. 20.06, V.A.C.C.P., their deliberations concerning any inquiry into presentment of an indictment are secret. Art. 20.02, V.A.C.C.P. In this sense, the grand jury, charged with deciding upon the presentment of an indictment by secret deliberations, is of a separate and independent nature from the court.

However, in another sense, the grand jury is very connected to the court which impaneled it. The court exercises supervisory power over the grand jury whether by impaneling, re-assembling, qualifying, quashing subpoenaes, or aiding investigation. The grand jury "is more frequently characterized as 'an arm of the court by which it is appointed.'" W. LaFave & J. Israel, Criminal Procedure, § 8.4 at p. 625 (1984), rather than as an autonomous entity. Given the relation and function of the court to the grand jury, this characterization is quite accurate and is shown by the operation of Art. 20.15, V.A.C.C.P.

Art. 20.15, V.A.C.C.P., gives the district court jurisdiction, power and authority over one not otherwise subject to the power of the court. See also *Ex parte Wilkinson*, 641 S.W.2d 927 (Tex.Cr.App.1982). Art. 20.15 states:

When a witness, brought in any manner before a grand jury, refuses to testify, such fact shall be made known to the attorney representing the State or to the court; and the court may compel the witness to answer the question, if it appear to be a proper one, by imposing a fine not exceeding five hundred dollars, and by committing the party to jail until he is willing to testify.

The court thus aids the investigation of the grand jury under the authority of Art. 20.-15. However, the court also exerts some "control" or supervision over the grand jury under Art. 20.15. The court decides if the question propounded before the grand jury is proper, and, thus, decides whether or not to aid the investigation of the grand jury by then compelling an answer. Without the action of the court the grand jury is powerless to enforce its investigative duty to gain testimony from a witness and decide on the presentment of an indictment. In this sense, the court acts independently and in a supervisory role (deciding whether to compel an answer) as well as jointly with the grand jury (jurisdiction is by virtue of the witness's refusal to testify before the grand jury—Art. 20.15).

A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so.

*Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), overruled by *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). See also *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

■ The mere refusal by a witness, to answer questions propounded by a grand jury, without more, is not contempt. The grand jury has no power or authority to find or hold one in contempt for such refusal. The grand jury must go to the court

for recourse. The *court may compel* the witness to answer by so ordering. Art. 20.15. Upon refusal by the witness, the court may then punish the witness *for violating the court's order.* We agree that "[i]f relator upon being brought before the court in the first instance had averred his willingness to answer to the jury, but not to the grand jury, it would have availed him nothing." *Ex parte Jackson*, 95 Tex. Cr.R. 200, 253 S.W. 287, 289 (1923). Given the duty of the grand jury under Art. 20.09 and the secrecy of the grand jury under Art. 20.02, both supra an answer before the judge is of no merit. It thwarts the independent aspect, the responsibility, and the duty of the grand jury to hear testimony as to presentment of an indictment. But, it is still the court alone which has the power to compel testimony before the grand jury. In terms of a nexus between the court and the grand jury, the independent fact-finding and ultimate charging determination may depend in large part on the enforcement powers of the court.[1]

■ Therefore, once the *court orders* the witness to answer before the grand jury, then a violation of such order constitutes contempt of the *court.* While the act of refusal—the violation of the specific order—occurs before the grand jury, the contempt is the violation of the *court's order,* and is, thus, contempt of the court. *Ex parte Port*, supra, is overruled to the extent that it holds such action to constitute contempt of the grand jury and requires the order of contempt to so state.

The court's orders finding applicants in contempt of court by violating the court's order to answer before the grand jury are proper. See *Ex parte Shorthouse*, supra.

The applicants are entitled to relief from that portion of the contempt judgments requiring them to appear before the·grand jury and testify in order to purge themselves of contempt. The applicants each are still liable for the $500 fine imposed by the contempt judgment. Relief in this regard is denied.

It is so ordered.

McCORMICK and WHITE, JJ., concur in the result.

CLINTON, Judge, dissenting.

In *Ex parte Port*, 674 S.W.2d 772 (Tex. Cr.App 1984), this Court, relying on over sixty years of Texas caselaw, held *per curiam* that the unjustified refusal to answer the questions of a grand jury constituted contempt *of the grand jury*, punishable under Art. 20.15, V.A.C.C.P., as such and not under Art. 1911a, V.A.C.S., as "contempt of *court*." See also, *Ex parte. Wilkinson*, 641 S.W.2d 927 (Tex.Cr.App.1982).[1] Because the present majority now overrules that holding on a spurious rationalization dehors the statute, I must dissent.

Notable for its absence from the majority opinion is citation to Texas caselaw, other than an incidental reference to *Ex parte Jackson*, 95 Tex.Cr.R. 200, 253 S.W. 287 (1923) and *Ex parte Wilkinson*, supra. This abandonment of *stare decisis* is particularly disturbing because the applicable statute, Art. 20.15, supra, has remained

---

**1.** The dissenting opinion cites several cases for the proposition that the grand jury is a completely independent, severed entity from the court. Those cases specifically deal with the independent process of the panel on judging the sufficiency of evidence and returning an indictment, the *summoning* of witnesses and the grand jury's independence in other matters of deliberation. The independence of the grand jury in these areas remains clear. But it is incorrect to infer that prior Texas law has endowed the grand jury with strictly independent powers of enforcement. The better view is that enforcement by the court falls within general supervisory powers it has over the panel which facilitates the iindependence of the fact-finding process.

**1.** Although *per curiam*, see Tex.R.App.Pro. Rule 223(b), only a plurality of four judges joined the opinion in *Port*. Two judges concurred in the result and three did not participate. However, all but one of those judges had earlier joined the majority opinion in *Wilkinson*, stating that "[i]t would appear from the face of Article 20.15, supra, that the applicants could have been found in contempt *after their first refusal to answer the grand jury's questions*" and before the State sought an order from the court compelling them to testify, provided appropriate grants of immunity were given before the grand jury and "the court found the questions 'proper' etc." 641 S.W.2d at 933 n. 3.

unchanged in substance since adoption of the Old Code of Criminal Procedure. See, art. 381, Old Code (1857); also, *Ex parte Jennings*, 91 Tex.Cr.R. 612, 240 S.W. 942 (1922) and *Ex parte Miller*, 91 Tex.Cr.R. 607, 240 S.W. 944 (1922). The majority makes no effort to justify its departure from scores of years of more or less continuous Texas precedent.

Also notable is reliance by the majority on *Brown v. United States*, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), overruled by *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), for the proposition that the grand jury is an "appendage of the court" which impanels it. This occurs even though the majority acknowledges that *Brown* was overruled over 20 years ago. The cryptic citation to "see also *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975)", adds nothing for, as the majority in *Wilson* recognized, "[t]he crucial difference between" *Harris* and *Wilson* is that *Harris* dealt with a refusal to testify before the grand jury, while *Wilson* concerned the refusal to testify *at trial*. 421 U.S. at 318, 95 S.Ct. at 1807, 44 L.Ed.2d at 194. See also *Wilkinson*, 641 S.W.2d at 933–34 (Clinton, J. concurring). Further, it ignores statements by members of this Court that *Brown* and *Harris* "were not decided on constitutional grounds, but were merely interpretations of Federal Rules of Procedure." 641 S.W.2d at 934 (Dally, J., dissenting in which the author of the present majority opinion joined). See also, *Harris*, 382 U.S. at 162–163, 86 S.Ct. at 353, 15 L.E.2d at 241–42; *Wilson*, 421 U.S. at 320–322, 95 S.Ct. at 1808, 44 L.Ed.2d at 195 (Blackmun, J., joined by Rehnquist, J., concurring). A cursory reading of *Wilson* reveals that that decision also concerns the Federal Rules of Criminal Procedure and does not purport to reach constitutional grounds. Moreover, to the extent that any of the language in these decisions is dispositive of the issue of the relationship between *Texas* trial courts and grand juries, it would appear to be that in *Harris*, direct-

ly contrary to the majority's present position:

> "*The real contempt, if such there was, was contempt before the grand jury*— the refusal to answer to it when directed by the court. Swearing the witness and repeating the questions before the judge was an effort to have the refusal to testify 'committed in the actual presence of the court' for purposes of Rule 42(a). It served no other purpose, for the witness had been adamant and had made his position known. *The appearance before the District Court was not a new and different proceeding, unrelated to the other. It was ancillary to the grand jury hearing and designed as an aid to it.*" [2]

382 U.S. at 164–65, 86 S.Ct. at 354, 15 L.Ed.2d at 242. See also *Brown*, 359 U.S. at 53–56, 79 S.Ct. at 548–49, 3 L.Ed at 618–24, Warren, C.J., joined by Black, Douglas and Brennan, JJ., dissenting); *United States v. Armstrong*, 781 F.2d 700, 705 (CA9 1986).

More important than the majority's disregarding established Texas caselaw or its misconstruction of the caselaw of the United States Supreme Court, however, is its misapprehension of the special relationship between Texas courts and grand juries and the misconstruction of Art. 20.15, supra, underlying the majority's position.

Central to the majority's reasoning is the idea that the grand jury is an "appendage" or "an arm of the court by which it is appointed." Maj. Op. at 447–448. But that idea is foreign to Texas law, which traditionally has viewed the grand jury as "a legally constituted ... governmental agency", *Ex parte Kennedy*, 116 Tex.Cr.R. 118, 33 S.W.2d 443 (1930), "a separate tribunal," *Barnes v. State*, 134 Tex.Cr.R. 461, 116 S.W.2d 408, 409 (1938); *Rodgers v. County of Taylor*, 368 S.W.2d 794, 796 (Tex.Civ.App.—Eastland, 1963, writ ref'd n.r.e.), "independent of the control of judges and prosecutors," *Whittington v. State*, 680 S.W.2d 505, 512 (Tex.App.—Tyler, 1984) (P.D.R. ref'd); and e.g., *Ex parte Rodriguez*, 629 S.W.2d 757 (Tex.Cr.App.

---

**2.** All emphasis supplied unless otherwise indicated.

1982); *Ex parte Rogers,* 640 S.W.2d 921 (Tex.Cr.App.1982), whose independence from both is vital to its proper functioning as a protector of liberty, *Tobin v. Broadfoot,* 160 Tex.Cr.R. 190, 268 S.W.2d 162, 166 (1954) (Morrison, J., dissenting); see also *United States v. Dionisio,* 410 U.S. 1, 16, 93 S.Ct. 764, 773, 35 L.Ed.2d 67, 81 (1973); *Armstrong,* 781 F.2d at 704 and cases there cited.

Accordingly, the Texas Supreme Court has held that power and authority to impanel a grand jury is not inherent in the district courts created by the Texas constitution and statutes. *Jordan v. Crudgington,* 149 Tex. 237, 231 S.W.2d 641, 644 (1950). Instead, the applicable law directs the court to appoint a commission of 3 to 5 qualified persons, Arts. 19.01–19.05, V.A.C. C.P., who in turn select the members of the grand jury, *id.,* Art. 20.09, and deliberate in private, *id.,* Art. 20.02, which deliberations may not be revealed even to the impaneling court, *id.,* Art. 20.06. The independence of the grand jury from its impaneling court is not a mere formality, but rather a critical element in preserving the grand jury system as a bulwark against executive, legislative or *judicial* tyranny. See, *Davis v. State,* 105 Tex.Cr.R. 359, 288 S.W. 456 (1926); *Adame v. State,* 162 Tex.Cr.R. 178, 283 S.W.2d 223 (1955); accord: *Tobin v. Broadfoot,* supra.

One result of this view of the grand jury as a separate, independent inquisitorial tribunal and investigatory body is that "a witness' refusal to answer grand jury questions is not conduct in the actual presence of the court," *Wilson,* 421 U.S. at 321, 95 S.Ct. at 1809, 44 L.Ed.2d at 196 (Blackmun, J., concurring joined by Rehnquist, J.); *Harris,* 382 U.S. at 164–65, 86 S.Ct. at 354; *Wilkinson,* 641 S.W.2d at 934 n. 2 (Clinton, J., concurring); *Armstrong,* 781 F.2d at 705. In part, that is the reason why the trial court's authority to punish persons in applicants' position under Art. 20.15, supra, (power it would not otherwise possess, no indictment or informations having been duly presented, TEX. CONST., Art. V § 12), is said to derive from that of the grand jury, a derivation the majority acknowledges. Maj.Op. at 447–448. See also

*Miller,* supra; *Jackson,* supra; *Ex parte McMurrough,* 390 S.W.2d 2 (Tex.Cr. App. 1965); and compare the discussion in *Harris,* supra, and *Wilson,* supra.

It is settled, though, that an act need not occur in the "immediate presence of the judge" to occur "in the presence of the court." *Ex parte Aldridge,* 169 Tex.Cr.R. 395, 334 S.W.2d 161, 165 (1960); *Ex parte Daniels,* 722 S.W.2d 707, 710 (Tex.Cr.App. 1987). Rather "[t]he court is present," and direct contempt occurs, "whenever any of its constituent parts are engaged in the prosecution of the business of the court, which constituent parts include the judge, the courtroom, the jury, and the jury room." *Ex parte Aldridge,* supra. If the grand jury were an "appendage" of its impaneling court, however, it too would have to be added to the list of "constituent parts" and any contemptuous conduct occurring in its presence would perforce occur in the presence of the court. Yet, this is precisely the reasoning rejected by this Court when it concluded that the general contempt powers granted under Art. 1911a, V.A.C.S., do not reach to actions before the grand jury, *Wilkinson,* supra, and again more recently when it concluded that Art. 20.15, supra, does not apply to contemptuous refusal to comply with a grand jury subpoena *duces tecum, Ex parte Marek,* 653 S.W.2d 35 (Tex.Cr.App.1983). Moreover, it is in obvious irreconcilable conflict with the construction by Texas courts that in proceedings under Art. 20.15, supra, the role of the trial court is to determine whether the unanswered question is "a proper one." *Jackson,* supra, 253 S.W. at 288; *Jennings,* supra; *Wilkinson,* supra, at 933; *Rodriguez,* supra, at 759; *Rogers,* supra, at 923; *Ex parte Shorthouse,* 640 S.W.2d 924 (Tex.Cr.App.1982); *Ex parte Moorehouse,* 614 S.W.2d 450, 452 (Tex.Cr. App.1981). Only when a question is "proper" does the court have jurisdiction to compel an answer through contempt. *Ex parte McMurrough,* supra, and cases cited therein.

Having misapprehended the relationship between Texas courts and grand juries, the majority compounds this error by miscon-

struing the meaning and requirements of Art. 20.15, supra. Thus, the majority recognizes that the statute grants the court power to punish noncompliance with a grand jury subpoena and, hence, aid the grand jury's investigation. Maj.Op. at 448. Having noted that, the majority then concludes, in what is perhaps an understandable *non sequitur*, that this grant of power, jurisdiction and authority also invests the court with discretion to "decide whether or not to aid" that investigation. *Id.* It cites no authority for this novel proposition, nor for the necessary concomitant propositions that this grant of discretion allows the court to hold improper a question otherwise proper under Art. 20.15, supra, see e.g. *Jennings*, supra, and *Miller*, supra; to refuse an otherwise proper request for immunity, see e.g. V.T.C.A. Penal Code, § 71.04; or to refuse a valid and proper request to "compel" a witness to comply with a grand jury subpoena. Such support is lacking for good reason: to grant the court such power is to sound the death knell for grand jury independence and to give judges a powerful tool with which to insulate themselves from grand jury inquisition. Compare *Ex parte Degener*, 30 Tex.App. 566, 17 S.W. 1111 (1891); cf. also, *United States v. Leyva*, 513 F.2d 774 (CA5 1975); *United States v. Doe*, 541 F.2d 490, 493, n. 6 (CA5 1976).

The majority goes on, again contrary to the statute and without citation to any authority whatsoever, to conclude that "[t]he mere refusal by a witness to answer questions propounded by a grand jury, without more, is not contempt," and can not become contempt unless and until a court additionally orders the witness to comply with a valid and proper summons and answer questions of the grand jury. Maj.Op. at 448–449. Thus, it is concluded, there is no contempt punishable under Art. 20.15, supra, without such an order by the court and, therefore, punishment under Art. 20.-15, supra, is for violation of that order. *Id.* The sole supporting reasoning for this novel proposition is the notion that the grand jury lacks power to enforce its summons by an order of commitment or fine. *Id.*

To say that a grand jury lacks power and authority to enter a judgment imposing a fine and ordering commitment for refusing to testify, cf. *Jennings; Miller; Jackson;* and *McMurrough*, all supra, and cases cited therein, however, is not to say that such an act is not contempt. Rather, it merely recognizes that a grand jury is not a judge and so does not have authority under the law to adjudicate questions of propriety of a particular question under Art. 20.15, supra, or to deprive a person of his liberty, cf. *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).

It is settled that a Texas grand jury has inherent power and authority to issue attachments or summonses for witnesses and documents. See Arts. 20.10–20.12, V.A.C.C.P.; *Ex parte Gould*, 60 Tex.Cr.R. 442, 132 S.W. 364, 367 (1910); see also *Branzburg v. Hayes*, 408 U.S. 665, 687–88, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643–44 (1972). Service is made by the bailiff or other officer, Art. 20.13, *Id.*, and evasion of such process, *without more*, is contemptuous of the grand jury, and the court may punish an evading witness by imposing a fine. Art. 20.14, *Id.* Once summoned, all witnesses have a legal duty to appear and testify "fully and truthfully," and it is redundant that a court may also order them to testify in compliance with that summons. See *Gould*, supra, *Miller*, 240 S.W. at 947; also, *United States v. Dionisio*, supra, *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *Port v. Heard*, 764 F.2d 423, 431–433 (CA5 1985); accord: *Shorthouse*, 640 S.W.2d at 927–28; *Wilkinson*, 641 S.W.2d at 933 n. 3; and *Ullman v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Refusal to do so is clearly contemptuous of the legal authority embodied in the attachment or summons, and it is that contempt before the grand jury for which punishment may be imposed under Art 20.15, supra. *Jackson*, 253 S.W. at 289 ("Relator was not committed for his refusal to answer questions to the judge, but to the grand jury.") In this situation, "[t]he power of the grand jury to initiate contempt charges *without any prior action by the court* has long

been recognized." *Armstrong,* 781 F.2d at 704. See also Art. 20.14, V.A.C.C.P.

Article 20.15, supra, expressly provides that a grand jury initiates a contempt proceeding against a recalcitrant witness by making known to attorney for State or to the court the fact that the witness has refused to testify.

Nor does Art. 20.15, supra, authorize conversion of this contempt of the grand jury into contempt of *court* by the simple expedient of having the court (unnecessarily) order the witness to comply with the summons. This Court effectively rejected that argument in *Wilkinson,* supra, and *Marek,* 653 S.W.2d at 37 n. 5, when it held that refusal to testify before a grand jury after granting of use immunity or to comply with a grand jury's subpoena *duces tecum* was not converted into "contempt of court" under Art. 1911a by virtue of the entry of an additional order by the impaneling court to so testify or comply. Art. 20.15, supra, merely grants the court the power and authority to find whether witness refused to answer a *"proper* question" and, if "proper," then to enter a judgment imposing a fine and ordering a commitment for such contempt of the grand jury. *Miller,* 240 S.W. at 946–47. It does not offer a mechanism whereby the contemptuous act before the grand jury can be converted into one before the court. If it were otherwise, then it would be sufficient to purge contempt under an order such as the one here in question, alleging "contempt of court," by presently answering *before the court* the questions earlier propounded before the grand jury. In such case, it would be difficult to justify the continued incarceration or fine of a witness who has in fact answered those questions before the court but who refuses to repeat those answers before the grand jury. However this Court made it clear that just such a course is not only allowed under Art. 20.15, supra, it is demanded by it.

"We are unable to give to the language used [in Art. 438, V.A.C.C.P. (1911), now Art. 20.15, supra] any other interpretation except that it means to testify before the grand jury. The imprisonment feature of this statute is evidently for the sole purpose of procuring answers from the witnesses to particular questions propounded by the grand jury before which they have been called to testify.

\* \* \* \* \* \*

"Relator was not committed for the refusal to answer questions to the judge, but to the grand jury. However desirable it may be to have his answers and however reprehensible his conduct in refusing to give proper information to the grand jury, we know of no law ... which would authorize [an order allowing him to purge himself of such contempt by testifying "before the judge"]. If relator upon being brought before the court in the first instance had averred his willingness to answer to the judge, but not to the grand jury, it would have availed him nothing. If now brought before the judge in vacation, not sitting as an examining magistrate, but simply to enable relator to answer the grand jury questions, would he answer under any binding oath? Would he be subject to any pains and penalties if he did not tell the truth? We do not think so."

*Jackson,* 253 S.W. at 288–89.

Because the majority ignores that command and departs, without justification stated or apparent, from a course consistently followed by the courts of this State for many years, I am compelled to dissent.

TEAGUE, J., joins.