LEWIS DOCKERY v. THE STATE.

*No. 984. Decided February 26th, 1896.*

**1. Indictment Found Upon Improper Evidence—Practice.**

The court cannot look behind the return of the grand jury and set aside an indictment because improper evidence has been received, or testimony of witnesses taken who were incompetent to testify at the trial.

**2. Assault With Intent to Commit Rape—Evidence as to Force.**

To constitute the offense of assault with intent to commit rape, it must appear from the evidence, beyond a reasonable doubt, and to this court with reasonable certainty that the accused intended, if it became necessary, to force compliance with his desires at all events, and regardless of any resistance made by his victim.

**3. Same—Evidence Insufficient.**

See statement of the case for evidence held insufficient to support a verdict and judgment of conviction for assault with intent to commit rape.

APPEAL from the District Court of Wise. Tried below before Hon. J. W. PATTERSON.

This appeal is from a conviction for assault with intent to commit rape, by appellant, upon one Agnes Dockery, wherein the punishment assessed was imprisonment for three years in the penitentiary.

Agnes Dockery was the only witness who testified in the case, and her testimony is as follows, viz: "My name is Agnes Dockery; I am 17 years old, was 17 last birthday; I know the defendant; he is my father. Up to the time of his arrest I lived with the defendant and my mother, who were married and living together; since then I live with my mother. We have lived in Wise County about one year, and moved from Delta County to Wise, and from Arkansas to Delta County. We only resided in Delta County a few months. About May, 1895, defendant came to my bed one morning just about daylight, and got in bed with me and pulled up my gown and put his hands on my secrets. I tried to get loose from him; I told him if he did not quit, I would call mamma; he would not quit, and I called mamma, who was in the kitchen; as I called her he hit me on the face with his hands, and as I heard mamma's footsteps on the steps leading into the house where we were, he turned me loose and went back to his own room. The kitchen is located a few steps away from the house I was sleeping in, and is a log kitchen. When he got in bed with me his pants were unbuttoned, except the top button. The day before the defendant was arrested, and about two months after the

attempt just testified to, he again came to my bed about the same time of the morning. My mamma was again in the kitchen. He got in bed with me, under the cover, and tried to pull up my gown, and I kicked him and got loose from him, and crawled out over the footboard of the bed and stood where mamma could see me from the kitchen. The first assault he made that I testified to, that morning I went over to Mrs. Vandiver's and told Miss Alice Vandiver that defendant had mistreated me, but did not tell her how or in what way he mistreated me. The other assault, when I was in bed, I went that evening over to Mr. Austin's and told Mrs. Austin about it, and he, the defendant, was arrested the next day after I told Mrs. Austin about it. About a month before the defendant was arrested, I was standing on the floor in front of our looking-glass combing my head, and defendant caught hold of me from behind and threw me down on the bed near by and held me there and pulled up my clothes and tried to pull off my drawers. I kicked and fought loose from him and got out in the yard. My mother was out in the cow pen about fifty yards away. There was no one present on this occasion. At another time we were hoeing cotton in the field, and as we started home defendant sent my little brother by the well for a file, and defendant tried to get me to let him have intercourse with me, and told me that it would be no harm; that he could fix it so I would not have a baby, and no one would find it out. I told him it would be just as wrong as if everybody knew it, and told him I would not. All this occurred in Wise County, Texas. I always told my mother about such assaults on me. On one occasion I heard my mother and father talking about it, and the defendant told my mother that if she told it he would kill her and leave the country. All the assaults were made against my consent."

Cross-examined. She testified: "The house where we live is a three-room house, and a partition between the room where I slept and where my father slept; and the kitchen is a log house disconnected from the main house and a few steps away. On both of the occasions, when defendant came to my bed, that I testified to above, my mother was in the kitchen getting breakfast. My little sister was in the bed with me, my little brother, who is 13 years old, and another smaller brother were sleeping on the floor on a pallet in the same room. Yes, sir, the defendant, just before we moved to Texas, and we lived in Arkansas, had intercourse with me twice. I knew Mr. Vandiver, and knew he was Justice of the Peace. I told mother on every occasion that he attempted to have intercourse with me. We have quite a number of neighbors. I never told anyone about it except Miss Vandiver, my mother and Mrs. Austin. I only told Miss Vandiver that he mistreated me, did not tell her the particulars. About the first of January, this year, I took some tea to bring my monthly sickness. I never told any one that I was afraid I was pregnant. I knew I was not pregnant because I never had intercourse with any one except my father on the two occasions in Arkansas. My monthly sickness not appearing at its regular time was caused by defendant driving me out of the house in the cold. The defend-

-ant, on several occasions, asked me to let him have intercourse with me, one time was down in the cotton patch, that I have told about. The defendant frequently came to my bed and felt of my feet and legs, but never tried to force me, except on the occasions that I have testified about. The brother that I have spoken of as being 13 years of age, is only my half-brother. The reason why I know defendant is my father is, that I have been always told he was my father. The kitchen, in which my mother was getting breakfast on the two occasions mentioned by me in my evidence, is just a short space from the house I was in at the time, and you could be in the room where I was and hear one talking in the kitchen where mother was. You could step out of the kitchen into the room I was in."

Re-direct by State: "The reason why I did not tell of these assaults sooner, was because I feared the defendant would kill my mother, as I had heard him threaten to do. My little brother, 13 years old, is not smart and hasn't got much sense. My little sister, who was sleeping with me, was about 7 years old. When the two assaults were made, they were all asleep. When he came to my bed, as above testified about, he never said anything at all. When the defendant had intercourse with me in Arkansas, the first time, I was about 14 years old; my mother and the children were away from home. He and I were there alone. He seized me and threw me down on the bed, and overpowered me, and had intercourse with me against my consent. The other time he had intercourse with me we were alone in the woods, gathering huckleberries. The little children were along, but some distance away. He threw me down and held me, and forced me. This is the only two times he ever forced me. He has never succeeded since I have grown older and stronger."

Re-crossed: "I never told anyone about his forcing me in Arkansas, except my mother."

*McMurray & Gose*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of an assault with intent to rape, and his punishment assessed at three years' confinement in the penitentiary, and prosecutes this appeal. A very remarkable procedure was had in this case, without any authority in law. It appears that the wife of the defendant was before the grand jury as a witness for the prosecution. This offense is not of that character as would permit the wife to become a witness against the husband. Counsel for appellant, because of the fact that the wife was a witness before the grand jury to procure the bill, moved to set aside the bill. This motion was overruled. In this there was no error. We cannot look behind the return of the grand jury, and set aside an indictment because improper evidence has been received, or testimony of witnesses taken who were not competent to testify in the case. To constitute the offense

of an assault with intent to commit rape, it must appear from the evidence, beyond a reasonable doubt, and to this court with reasonable certainty, that the accused intended, if it became necessary, to force compliance with his desires at all events, and regardless of any resistance made by his victim. See Rex. v. Lloyd, 7 Car. & P., 318; Reg. v. Wright, 4 Fost. & F., 967; Com. v. Merrill, 14 Gray, 415; Reynolds v. People, 41 How. Prac., 179; Joice v. State, 53 Ga., 50; State v. Burgdorf, 53 Mo., 65; Mahoney v. People, 43 Mich., 39; 4 N. W., 546; State v. Hagerman, 47 Iowa, 151; Taylor v. State, 50 Ga., 79; Brown v. State, 27 Tex. Crim. App., 330; Shields v. State, 32 Tex. Crim. Rep., 498. The question before us is, whether the testimony in this case fills the measure of proof in this particular. We are of the opinion that it does not, and therefore the motion for a new trial, upon the ground of the insufficiency of the testimony, should have been sustained. The judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

DAVIDSON, Judge, absent.