## W. A. CADDELL v. THE STATE.

### No. 2600. Decided October 22, 1902.

**1.—Assault with Intent to Commit Rape.**

In order to maintain a conviction for assault with intent to commit rape, the proof must show beyond a reasonable doubt that defendant made the assault upon the prosecutrix with the specific intent to rape her by force, and intended to accomplish his purpose at all hazards, and regardless of whatsoever resistance by his intended victim.

**2.—Same—Evidence Insufficient.**

See opinion for facts held insufficient to support a conviction for assault with intent to commit rape.

Appeal from the District Court of Eastland. Tried below before Hon. N. R. Lindsey.

Appeal from a conviction for assault with intent to commit rape; penalty, two years imprisonment in the penitentiary.

Appellant was indicted for assault with intent to commit rape upon Mrs. Mattie Key.

The opinion states the essential facts proved on the trial.

*J. T. Hammons,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to commit the crime of rape, and his punishment assessed at confinement in the penitentiary for a term of two years.

On the trial appellant requested the court to charge the jury on the question of force, as follows: "In an assault to rape, to be guilty the accused must make an assault upon the woman; the assault must be accompanied by a specific intention to rape; with the specific intention

to have carnal knowledge of the woman; to have carnal knowledge of the woman without her consent; to have carnal knowledge of the woman by force; to have carnal knowledge of the woman without her consent, and by the use of such force as is sufficient to overcome such resistance as the woman should make. And before you can convict the defendant of an assault with intent to rape as charged in the indictment you will have to find from the evidence beyond a reasonable doubt that defendant not only committed an assault upon prosecuting witness, Mattie Key, but such assault must have been made with the specific intention of having carnal intercourse with said witness without her consent; and it must further appear that said assault, if any, was made with force, and at the time of said assault the said defendant not only desired to gratify his passions upon her person, but that he intended, if it became necessary, to force a compliance with his desires at all events, and regardless of all entreaties and resistance offered by said prosecuting witness; and, unless you so find the facts to be, you will find the defendant not guilty of an assault with intent to rape, as charged in the indictment." While the court gave a charge defining force in general terms, yet, in view of the evidence, we believe the requested instruction should have been given, in order that the attention of the jury might have been directed to very issue in the case. Moreover, we do not believe that the evidence of the prosecuting witness on the question of force is sufficient to sustain this conviction. We copy that portion of her testimony which shows what appellant did at the time of the alleged assault. Prosecutrix was 17 years old, and had been married to Tom Key about eighteen months. She was well acquainted with defendant, having known him three or four years, and at the time he was residing near the house of prosecutrix, and was related to her by marriage, his brother having married the sister of prosecutrix. On the day in question the prosecutrix testifies that her husband left home to go horse hunting, and that she left to go to a neighbor's (Brogden's), who lived about a half mile south of her house, to get a scouring mop. This was about 8 or 9 o'clock in the morning. She got the mop, and started back, going along a trail by way of Mr. Joiner's house, situated about one-fourth of a mile from prosecutrix's house. As she approached her house she saw a man standing on the north side of the house, and a little to the right of it, behind a little clump of bushes, peeping toward the house. She says: "I got within twenty or thirty yards of the man before I saw him. As soon as I saw him, I saw it was not my husband, and threw down the mop and turned and started back toward Brogden's. As soon as I turned, the man run and got on his horse that was hitched a few yards away from him in the lane east of the house, and he started down the lane at a fast gait. I saw he was going fast, and I started to running. He run on down south in a little lane just east of our house, and instead of turning around the corner of the little field there east of the lane, and going on down the road that leads to Joiner's house, he left the road, and ran down the string of our field fence on the east

of the field wherein I was running, and he stopped his horse about fifty yards off from the road, in the bushes, and climbed through the wire fence there, and came across the field toward the trail I was traveling in, and toward a point in front of me, and I continued to run, and he ran also. I saw he was going to intercept me, if I stayed in the trail that turned southeast toward Brogden's house, so I left the trail, and ran down in the oat field, where the stubble was; but when I had gotten about a hundred yards in the stubble field he intercepted me, and the first I heard him say was, 'God damn you, I told you to stop there.' And he ran in front of me, and I stopped, and said to him, 'You go on back, and let me alone.' He said, 'I will go when I damn please, and I will do as I God damn please.' I started to go around him, and he said, 'You are going to give me some, ain't you?' I replied, 'No, I won't.' He then drew a loaded pistol from the waistband of his pants, and pointed it at me, and said, 'Yes, you will.' I told him that I would not, and for him to go on off. He was in three feet of me. I started on, and he said, 'If you tell Tom about this, I'll kill him.'" She further says that when she started on she saw three of Mr. Joiner's children in the east edge of the melon patch, which was about 100 yards from where defendant assaulted her, and that she stayed in the patch and played with the children until between 12 and 2 o'clock, when her husband returned; that she did not say anything to the children about Caddell, nor did she go to Joiner's or Brogden's and tell them; that she stayed at home all the evening, and her husband was about the place, but she did not tell him until the next morning about it.

As stated, if the conviction can be maintained it rests alone upon her testimony. While it is true that one who assaults a woman intending to ravish her commits the offense, even though he abandons the intention before he actually accomplishes his purpose, and the same is true if he were frightened away before the accomplishment of his full intention, still there was no intervention here,—no one frightened him away. There is no evidence even that he saw the children of Joiner or was seen by them. Prosecutrix says that she only saw them after she started away, they being about 100 yards distant in the melon patch. It has been held by a number of decisions in this State that, in order to maintain a conviction for an assault with intent to rape, the proof must show beyond a reasonable doubt that appellant made the assault upon the alleged female with the specific intent to rape her by force; that he must intend to accomplish his purpose at all hazards, and regardless of any resistance that his intended victim may make. Dockery v. State, 35 Texas Crim. Rep., 487, and authorities there cited. Now, in this case, concede, as we must, that all the prosecutrix says is true, her testimony fails to indicate that he intended to force her to a compliance with his wishes at all events. True, he ran after her and overtook her, and drew a pistol on her, and told her that she must "give him some." He was then in three feet of her. She told him that she would not do it, and for him to go on off. When she

told this he started on, and told her if she told her husband that he would kill her. We do not see how it can be contended that he had the determined purpose to accomplish his desires, when, after having her in his power, on her mere refusal to comply with his request he abandoned his purpose and went off. It may be conceded that if on this manifestation of force, through fear, she had yielded to his request and submitted to his embraces, this would have been rape; but it by no means follows that when she refused to yield, and he then desisted, this would constitute an assault with intent to commit rape, which can only be consummated where the intent was to use all necessary force to accomplish that purpose.

Because the evidence is insufficient, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*