**Stoney WHITTINGTON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 12–81–0148–CR.**

Court of Appeals of Texas, Tyler.

Jan. 19, 1984.

Rehearing Denied Feb. 9, 1984.

Discretionary Review Refused Oct. 24, 1984.

John D. Griffin, Center, for appellant.

John Walker, Dist. Atty., Bill Warren, Center, for appellee.

COLLEY, Justice.

On August 18, 1981, Whittington waived his right to trial by jury and pleaded guilty to the offense of Delivery of a Controlled Substance, to-wit: Phenmetrazine. His punishment was assessed by the court at five years confinement pursuant to a plea bargain agreement.

Whittington complains on appeal that the trial court erred in overruling certain pretrial motions, to-wit: (1) for a change of venue; (2) to set aside the indictment; (3) for continuance; and (4) to require rulings on pretrial motions by the trial court in open court. We affirm.

Whittington filed two motions to set aside the indictment alleging, inter alia, as grounds therefor that he was not served with a copy of the indictment immediately after the presentment of same and the filing thereof with the District Clerk as required by art. 25.01 of the Code of Criminal Procedure; that eleven grand jurors illegally met and discussed his case without the knowledge of the district judge; that Whittington did not have notice that the grand jury was being reassembled before the presentment of the indictment because the order of the court and summons issued thereto to reconvene the grand jury were not filed until the time of the filing of the indictment in the District Court; and that an unauthorized person was present during the grand jury deliberations in his case.

Whittington filed two motions to set aside the indictment, alleging the State was not ready for trial within the time limitations fixed by art. 32A.02 of the Code of Criminal Procedure, and therefore he was entitled to discharge pursuant to art. 28.-061.

■ The record shows that Whittington was arrested, presumably on a felony complaint, on August 13, 1980, and confined in jail until December 12, 1980, at which time he was released on bail. A certified copy of the indictment was served on Whittington on October 1, 1980. He was tried on August 13, 1981. We perceive no reversible error is presented because of the delay in the service of a copy of the indictment. Whittington pleaded guilty before the court approximately ten and one-half months after he received a copy of the indictment. The record fails to demonstrate how he was harmed by the delay. *Wray v. State,* 89 Tex.Cr.R. 632, 232 S.W. 808 (1921). No "due process" or "equal protection" rights were violated. *Jamerson v. Estelle,* 666 F.2d 241 (5th Cir.1982). Ground four is overruled.

■ In his second ground of error Whittington contends that the indictment should have been set aside because (1) he had no opportunity to challenge the array, or any individual member of the grand jury and (2) he was deprived of his right to an examining trial. We observe that Whittington has not filed a motion to quash the indictment challenging the array of the grand jury or any member thereof respecting the legality of the selection of such

panel, or any member thereof as he was entitled to do under the provisions of art. 27.03, Section 3 of the Code of Criminal Procedure.[1] Indeed, even in this court Whittington does not challenge the regularity of the selection, organization, and impanelment of the grand jury. His argument that he was deprived of such rights is without merit. Whittington claims that since he was indicted before an examining trial was afforded him, he was deprived of due process and equal protection under both the state and federal constitutions. We do not agree. It has long been the law in this state that the return of an indictment terminates any right to an examining trial with reference to an adult defendant under art. 16.01. Loss of the right to an examining trial does not offend any state or federal constitutional provision since the return of the true bill of indictment serves the identical purpose that an examining trial serves, viz., "... that there is probable cause to believe the 'accused' committed the crime charged." *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971). No "due process" or "equal protection" rights are involved. Ground two is overruled.

 Whittington argues under his third ground that the trial court erred in overruling his motion to set aside the indictment and discharge him because the State was not ready for trial within 120 days following his arrest on August 13, 1980, as required by the Speedy Trial Act. As already noted, Whittington filed a pretrial motion to set aside the indictment and for discharge under the Speedy Trial Act. The motion was filed on June 1, 1981, and urged in a pretrial hearing conducted on June 2, 1981. It is undisputed that the State announced ready on November 3, 1980, and again on June 2, 1981. No evidence was presented by Whittington on June 2, 1981, or at any other time to rebut the State's prima facie showing that it was ready for trial. Under such circumstances the State has shown compliance with the

time limitations of the act. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979). Whittington also complains that since he was confined in jail from August 13, 1980, until December 12, 1980, his trial should have been given preference for trial earlier than other criminal actions pending in the District Court of Shelby County by virtue of the provisions of art. 32A.01. Judge Odom in *Barfield v. State, supra,* noted by way of dictum that the last mentioned article was addressed "... in an advisory fashion to the courts of the State...." Aside from Judge Odom's comment, we find no other case discussing an alleged failure of a trial judge to give preference to the trial of cases of jailed defendants over the trials of cases of defendants at liberty on bail pending trial. The record discloses that the District Attorney had testified that Whittington's case was delayed because of the "court's case load." We also judicially notice that the 123rd Judicial District Court of Shelby County is comprised of two counties, Panola and Shelby, and that the court only has three terms each year in Shelby County beginning on the first Monday of the months of March, July and November, and that each term continues for eight weeks. Art. 199–123, Tex.Rev.Civ.Stat. Ann. (Vernon 1969). Given these facts and circumstances we are unable to conclude that the trial judge failed to give preference to the trial of Whittington's case. We hold that the provisions of art. 32A.01 are advisory, and that failure of a trial judge to comply therewith does not constitute reversible error. Ground three is overruled.

 Whittington complains of the trial court's action overruling his motion for change of venue. Whittington claims that pretrial publicity created such prejudice against him that he could not receive a fair and impartial trial in Shelby County. At the time the motion was urged, Whittington and the State agreed that the testimony of eight witnesses whose testimony was previously given in a hearing of a motion

---

1. All references to articles refer to the Texas Code of Criminal Procedure unless otherwise indicated.

for change of venue filed and urged by the defendant in a case styled "The State of Texas v. Billy Gene Bridges, Jr., No. 11,-504, on the docket of the 123rd Judicial District Court of Shelby County on the 17th and 18th days of November 1980 would be considered by the court respecting the motion for change of venue in this case. We have carefully reviewed such testimony. Only three witnesses out of six produced by the defendant Bridges testified that *Bridges* could not receive a fair trial in Shelby County. Those three were Bailey (Bridges' uncle), Hutchison (Bridges' mother-in-law) and Miller Thomas, an attorney who together with his law partners represented several persons indicted by the same grand jury for drug offenses similar to the offense with which Bridges was charged. Thomas testified that because of pretrial publicity produced by the news media, newspapers, radio and T.V. concerning a mass arrest of persons on August 13, 1980, by state and local law enforcement authorities (sixty-six indictments were returned the next day by the Shelby County grand jury), *Bridges* could not receive a fair and impartial trial in Shelby County. The remaining witnesses produced by Bridges were McCoy, editor of a local weekly newspaper; Sanders, news director of radio station KDET, Center; and Robert Pinkston, editor of another weekly newspaper circulated in Shelby and adjoining counties. Testimony and other evidence of news stories and transcripts of radio broadcasts reveal that the mass arrests of numerous persons charged with possession and delivery of controlled substances on the one evening, August 13, 1980, generated many headlines and news stories which were circulated by newsprint to most families in Shelby County. Sanders testified that he estimated the listening audience of his radio station to consist of some 800 to 1,000 families. Pinkston testified that his paper had a circulation of some 3,800 in Shelby County, and that the arrest, indictments, and trials of the numerous defendants was the "... most publicized event concerning criminal cases in ... last few years." The State at the venue hearing produced two witnesses, Robin Collins, an attorney from Nacogdoches, and Harland Eakin, Shelby County Tax Collector. During the testimony of the state's witnesses an exhibit was introduced showing the 1970 population of Shelby County to be 19,672. Eakin testified that the current voters list in Shelby County showed 12,525 registered voters in the county. Eakin also testified that he thought *Bridges* could receive a fair trial in Shelby County as did defendant's witnesses McCoy, Sanders and Pinkston. An analysis of the evidence reflects that most of the pretrial publicity describing the mass arrests and the indictments of the various defendants peaked during the first week or two following August 13, 1980. Some radio and newspaper stories appeared until the middle of November 1980. The pretrial motion was tried on June 2, 1981. The record does not show that any of the pretrial news stories, broadcasts or telecasts were exaggerated or inaccurate. None of the publicity focused on Whittington's case but in the main simply reported the facts accurately concerning the mass arrests occurring on August 13, 1980, grand jury action, docket calls, and trial results obtained through the middle of November 1980. No evidence was introduced showing any newspaper, radio broadcast or telecast concerning Whittington's case that were printed or made after November 1980. All of the pretrial publicity treating the events of August 13, 1980, were noninflammatory, accurate, and obviously written, spoken and printed to inform the public of news-worthy events. Based on the conflicting testimony above described, the trial court, as the trier of the facts, overruled the motion for change of venue. We hold that the trial court did not abuse its discretion in overruling the motion for change of venue *Demouchette v. State*, 591 S.W.2d 488, 490 (Tex.Cr.App.1979), *cert. den'd* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996. Ground five is overruled.

█ Whittington asserts by his sixth ground of error that the trial court's rulings on some of his pretrial motions were not made in open court. The record shows

that all pretrial motions were heard and urged in open court, but that the trial judge took several of the motions under advisement and later made various docket entries overruling some of said motions taken under advisement by him in open court. This ground of error is not properly briefed in that no authority is cited in support thereof. Whittington complains such action denied him due process and equal protection by virtue of the 5th and 14th Amendments to the United States Constitution and Article 1 §§ 10 and 9 of the Texas Constitution. In addition, Whittington argues that the provisions of art. 28.01 requires that rulings on pretrial motions must be made in open court. We do not agree with Whittington's view of art. 28.01. Such article simply requires all pretrial motions to be presented in open court in the presence of the defendant and his counsel. Indeed, we are now in fact reviewing such rulings of the trial court. There is no merit to Whittington's contention. Ground six is overruled.

■ Whittington urges by his seventh ground that the trial court erroneously overruled his second motion for continuance. Such motion was filed and urged on August 17, 1981, before art. 29.08 was amended by Acts 1981, 67th Leg. p. 504, ch. 210, sec. 1, effective September 1, 1981. Before the 1981 amendment art. 19.08 read: "All motions for continuance on the part of the defendant must be sworn to by himself." Whittington's motion for continuance was signed and sworn to by counsel only. No error is shown. *Lopez v. State*, 535 S.W.2d 643 (Tex.Cr.App.1976); *Zanders v. State*, 515 S.W.2d 907 (Tex.Cr.App. 1974). Moreover, such motion for continuance failed to allege and the proof offered in support thereof did not establish that the presence of the alleged material witnesses for the defendant, Adams and Armstreet, whose unavailability for trial on August 17, 1981, constituted the grounds for the motion, could be reasonably expected at the next term of court. Article 29.07. Indeed, from the evidence adduced at the hearing it appears that a continuance granted because of the absence of the named witnesses would delay the trial indefinitely. Under this record the trial court did not abuse its discretion in overruling the second motion for continuance made by Whittington. *Salinas v. State*, 542 S.W.2d 864 (Tex.Cr. App.1976). Seventh ground of error is overruled.

■ Under his first ground Whittington argues that eleven of the grand jurors who returned the indictment against him in this case were subjected to improper influence prior to the time that they were reassembled by the district judge.

The record shows that the grand jury was selected and impaneled at the July 1980 term of court and had been discharged the same month. The grand jury was reassembled by order of the District Judge and met on August 14, 1980, to consider charges against various defendants, including Whittington. On August 8, 1980, apparently at the suggestion of the Shelby County Sheriff, eleven members of the grand jury panel met in the directors room of a bank in Center. The sheriff and one of his deputies attended the meeting. The avowed purpose of the meeting was to discuss criminal drug activity in Shelby County. Neither the district judge nor the district attorney knew of such meeting. At this meeting, the sheriff hinted of things to come. He informed the jurors that they would be reassembled by the court to consider "drug cases." The sheriff said that he and other law enforcement authorities had at great personal risk worked on numerous drug cases which this grand jury would have to consider shortly, and asked the grand jurors for their support to "clean up the dope problem in Shelby County." The defendant's identity as one of the persons being involved was not revealed, nor were the names of any other defendants or cases alluded to by the sheriff or his deputy during the course of the meeting.

Whittington contends that the indictment should have been set aside by the trial court because the private meeting of such jurors with the sheriff and his deputy on August 8 was illegal, and that such jurors

acquired a bias or prejudice against him as a result of communications between the jurors and the sheriff and his deputy. We conclude such contentions are totally without merit. First, the meeting on August 8 did not constitute a meeting of the grand jury because such panel had been discharged by the trial judge in July 1980 and, as of the date of the "meeting," had not been reassembled by order of the judge under art. 19.41. Hence the meeting was nothing more than a free assembly of private citizens wholly without any official power or authority to investigate or accuse any person or persons suspected of committing criminal offenses. However, if the sheriff and his deputy intended and sought to entreat the jurors to indict Whittington or any other person upon considerations other than those authorized by law, such conduct would be improper, if not unlawful. Section 36.04, Texas Penal Code. There is no evidence in this record showing that either the sheriff or his deputy attempted to persuade any one or more of the eleven former members of the grand jury to so act. The entire dialogue between the officers and the eleven citizens amounted to nothing more than a "do your duty" pep talk. The meeting was, as it was characterized by one of the testifying grand jurors, "useless." It was also ill-advised and served only to cast suspicion and doubt on the integrity of the actions of the grand jury. We conclude that its occurrence did not harm Whittington. The testimony of the eleven persons present at that meeting was unanimous to the effect that no specific cases or names of any suspected person or persons was even mentioned by the sheriff or his deputy.

Another aspect of Whittington's contention is that such alleged improper influence, bias and prejudice, deprived him of "due process" and "equal protection." Such claims seem frivolous to us since Whittington pleaded guilty; however, since this ground as raised in the pretrial written motion [2] to set aside the indictment arguably comports with the ground presented in Whittington's brief, we must nevertheless consider it. Article 44.02. Since no challenges are made to the qualifications, selection or organization of the grand jury panel or any member thereof, no "equal protection" rights are involved.

Next we consider whether the "due process" clause of the 5th Amendment to the United States Constitution or the provisions of Article 1, § 19 of the Texas Constitution requires us to reverse the conviction and order dismissal of the indictment against Whittington because of the events of August 8, 1980, above discussed.

The United States Supreme Court, speaking through Justice Black, declared in *Costello v. U.S.*, 350 U.S. 359, 361, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), "... the grand jury [convenes] as a body of layman, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor." Further, Justice Black stated in effect that grand jurors "... act on their own knowledge and ... [are] free to make their presentments or indictments on such information as they deem satisfactory." Article 1, § 10 of the Texas Constitution provides in part, "... and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger." Article 19.34 prescribes the oath to be administered the grand jurors before they began their sessions. The oath contains the following language:

> You shall present no person from envy, hatred or malice; neither shall you leave any person unpresented for love, fear, favor, affection, or hope of reward; but you shall present things truly as they come to your knowledge, according to

---

**2.** The motion alleged, "it appears that at least eleven grand jurors met and discussed this case, ... prior to being reassembled by the district judge ...."

the best of your understanding, so help you God.

This oath, in substantially the same language, has been a part of our statutory law for more than one hundred years. It has been said that the institution of the grand jury was so essential to basic liberties that it was incorporated into the 5th Amendment of the United States Constitution. *U.S. v. Hogan,* 712 F.2d 757, 759 (CA 2 1983); and in Texas, the requirement that persons must be prosecuted for felony offenses only on indictment by a grand jury has been included in every Texas Constitution. (See interpretive commentary to Article 1, § 10, Texas Constitution (Vernon 1955.) In consideration of the importance of the place occupied by the grand jury in our system of government, Texas courts have long described the grand jury as a separate tribunal, independent of the control of judges and prosecutors, whose proceedings are secret, vested with broad inquisitorial powers. *Dockery v. State,* 35 Tex.Cr.R. 487, 34 S.W. 281 (1896); *Barnes v. State,* 134 Tex.Cr.R. 461, 116 S.W.2d 408, 409 (1938); *Rodgers v. County of Taylor,* 368 S.W.2d 794, 796–797 (Tex.Civ.App.—Eastland 1963, writ ref'd n.r.e.); see also *Ex parte Gould,* 60 Tex.Cr.R. 442, 132 S.W. 364, 365 (1910); also see art. 19.01, et seq. and art. 20.01, et seq.

In the recent decision of *U.S. v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983), Justice Brennan observed that the [federal] grand jury "... has always occupied a high place as an instrument of justice in our system of criminal law....," and that "[I]t serves the 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.'" (Quoting from *Branzburg v. Hayes,* 408 U.S. 665, 686–687, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). Again in *U.S. v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, the Supreme Court recounted some attributes of the grand jury, saying,

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. 'It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).

Certainly no less may be said for the grand juries of this state. Each of the pronouncements by the United States Supreme Court are as true of the Texas grand juries as they are of federal grand juries. The integrity and independence of our grand jury system must be protected from unwarranted intrusion by way of prosecutorial misconduct as well as improper influences exerted upon the grand jurors which is calculated to evoke grand jury action based on prejudice and bias alone. The 5th Circuit stated in *U.S. v. Cathey,* 591 F.2d 268, 273–274 (1979), that if improper and inflammatory remarks made by a government agent witness before a grand jury so biased the grand jurors that their votes were based on their bias, the resulting indictment would be dismissed.

In our case, as already noted, neither the sheriff nor his deputy made any remarks concerning Whittington or the facts relating to the offense with which he was later charged. The trial judge heard all the evidence pertinent to Whittington's contention here, and we conclude that he did not abuse his discretion in overruling Whittington's motion to set aside the indictment based on the grounds that the grand jury's indictment was returned by votes based solely on bias or prejudice as Whittington con-

tends. No violation of Whittington's due process rights is shown.

Finally we address Whittington's contention that the trial judge erred in overruling his motion to set aside the indictment because an unauthorized person was present during the deliberations of the grand jury on August 14, 1980. After a careful review of the evidence contained in the statement of facts, we conclude that the record does not factually support Whittington's contention. He failed to discharge the burden required of him. *Ray v. State*, 561 S.W.2d 480 (Tex.Cr.App.1977). The trial judge impliedly found that no unauthorized person was present during the deliberations by his action in overruling the motion to set aside the indictment on such ground. We find no abuse of discretion by the trial judge. Whittington's first ground of error is overruled.

The judgment of the trial court is affirmed.